OPINION
{¶ 1} Although this appeal was originally assigned to our accelerated calendar, we have elected to issue a full written opinion in accordance with Loc.R. 12(5).
 {¶ 2} Plaintiff-appellant, Laurie Brookman [et. al], appeals the judgment of the Allen County Court of Court of Common Pleas granting summary judgment in favor of defendant-appellee, Cincinnati Insurance Company (hereinafter, "Cincinnati Insurance").
 {¶ 3} On August 4, 2001, Lori Brookman sustained personal injuries when the vehicle in which she was a passenger exploded following a one car accident. Pursuant to the Ohio Supreme Court's decision inScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660,[1]
Brookman sought uninsured/underinsured motorist (hereinafter, "UM/UIM") coverage under both the commercial general liability policy and the umbrella policy issued by Cincinnati Insurance to her employer, the Gooding Company. Cincinnati Insurance denied Brookman's claim and moved the trial court for summary judgment.
 {¶ 4} The trial court found that neither the general liability policy nor the umbrella policy were "motor vehicle liability policy of insurance," as defined by R.C. 3937.18(L).[2] Because neither policy was found to be a motor vehicle liability policy of insurance, the trial court held that UM/UIM coverage did not arise by operation of law and that Cincinnati Insurance was not required to offer Brookman UM/UIM coverage.
 {¶ 5} The trial court also found in the alternative, that even if the umbrella policy was construed to be a "motor vehicle policy," there was a valid offer and rejection of UM/UIM coverage pursuant to Linko v.Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445. Accordingly, the trial court granted summary judgment in favor of Cincinnati Insurance.
 {¶ 6} It is from this judgment that Laurie Brookman appeals and sets forth three assignments of error for our review. For purposes of clarity and brevity, we will address the appellant's assignments of error together.
 ASSIGNMENT OF ERROR NO. I The trial court erred in declaring that defendant-appellee hadno duty to offer uninsured/underinsured motorist coverage.
 ASSIGNMENT OF ERROR NO. III The trial court erred in declaring that defendant-appellee made a validoffer and secured a valid rejection of uninsured/underinsured motoristcoverage from its insured.
 ASSIGNMENT OF ERROR NO. II The trial court erred in declaring that defendant-appellee had no dutyto offer uninsured/underinsured motorist coverage in conjunction with thecommercial general liability insurance policy issued to the GoodingCompany as CIC's written acquiescence to the application of R.C. 3937.18to the umbrella policy likewise dictates that CIC had an obligation tooffer UIM coverage in conjunction with the CGL policy.
 {¶ 7} R.C. 3937.18 requires insurance carriers to offer UM/UIM coverage with each "motor vehicle liability policy" it issues. If a motor vehicle liability policy is issued to an insured without a valid offer of UM/UIM coverage by the insurer, such coverage is deemed to arise by operation of law. See R.C. 3937.18(A)(1) and (2). As used in R.C. 3937.18(L) "automobile liability or motor vehicle liability policy of insurance" means either a policy of insurance that serves as proof of financial responsibility for owners or operators of motor vehicles specifically identified in the policy of insurance or an umbrella liability policy of insurance written as an excess policy over one or more automobile or motor vehicle liability policies of insurance. See R.C. 3937.18(L)(1) and (2).[3] Our first inquiry, therefore, is whether either the commercial general liability policy or the umbrella policy issued by Cincinnati Insurance to the Gooding Company are "motor vehicle liability policies" which would require Cincinnati Insurance to offer UM/UIM coverage to the insured. See R.C. 3937.18(A)(1).
 {¶ 8} We herein hold, pursuant to our prior decision in Reffit v.State Auto Mut. Ins. Co., Allen App. No. 1-02-38, 2002-Ohio-4885, that the commercial general liability policy issued to the Gooding Company by Cincinnati Insurance is not a "motor vehicle liability policy" as defined by R.C. 3937.18(L)(1), as it fails to specifically identify any motor vehicles to be covered under it. Although the commercial general liability policy contains a "hired auto and non-owned auto liability" endorsement, the inclusion of such an endorsement does not convert the policy into a "motor vehicle liability policy." See Reffit, supra.[4] It follows that, because the umbrella policy was not written as an excess policy over an automobile or motor vehicle liability policy of insurance, it does not qualify as a motor vehicle liability policy in which UM/UIM coverage is required to be offered by the insurer. See R.C. 3937.18
(L)(2).
 {¶ 9} Brookman, however, argues that the umbrella policy was a motor vehicle liability policy in that Cincinnati Insurance had represented to the insured, the Gooding Company, that the Gooding Company was either required to pay an additional premium for UM/UIM coverage under the umbrella policy of insurance or reject UM/UIM coverage in its entirety. Brookman argues that by making this representation, Cincinnati Insurance is now estopped from denying that it was required by Ohio law to offer UM/UIM coverage under the umbrella policy to the Gooding Company. Rather, because of its representation, Brookman maintains that Cincinnati Insurance was legally obligated to provide UM/UIM coverage to the Gooding Company.
 {¶ 10} Assuming, arguendo, that Cincinnati Insurance is estopped from arguing that it was required to offer and/or provide the Gooding Company UM/UIM coverage as part of the umbrella policy, the umbrella policy also contains a form endorsed by the Gooding Company in which the Gooding Company agreed to reject UM/UIM coverage in its entirety.
 {¶ 11} The UM/UIM offer and rejection form, which was attached to and became part of the umbrella policy, meets the requirements of a valid rejection as set forth in Linko v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445, and R.C. 3937.18(C).[5] The offer and rejection form in the case sub judice clearly informs the Gooding Company of the availability of UM/UIM coverage, sets forth the premium for UM/UIM coverage, includes a brief description of the coverage, expressly states the coverage limits, and was signed by an agent of the Gooding Company. Furthermore, the rejection form became effective prior to the accident in which Brookman was injured.
 {¶ 12} Accordingly, appellant's first, second and third assignments of error are overruled.
 {¶ 13} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Bryant, P.J., and Shaw, J., concur.
[1] We note that in the current appeal, it is unclear from the record whether appellant, Brookman, would be entitled to UM/UIM coverage following the Ohio Supreme Court's recent decision in Westfield Ins. Co.v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849. In Galatis, the Court modified and limited the holding in Scott-Pontzer, supra, and held that "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." Galatis,
supra, at paragraph two of the syllabus. Neither party to this appeal, however, has raised the issue of whether Brookman is an "insured" under the policies in question and entitled to UM/UIM following the Ohio Supreme Court's decision in Galatis. We, therefore, are unable to determine the effect of the Court's decision in Galatis to Brookman's claim in the case at bar.
[2] In making its decision, the trial court relied on R.C. 3937.18
version H.B. 261, effective September 3, 1997 and S.B. 57, effective November 2, 1999.
[3] The insurance policies issued by Cincinnati Insurance to the Gooding Company were entered into and became effective on September 1, 2000. We, therefore, apply R.C. 3937.18 version S.B. 57, effective November 2, 1999, to the rights and obligations of the parties herein. See Ross v. Farmers Ins. Group of Cos. (1988), 82 Ohio St.3d 281 (for the purpose of determining the scope of insurance coverage the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties).
[4] While Brookman does not specifically argue that "hired auto and non-owned auto liability" endorsement converts the general liability policy into a motor vehicle liability policy, we note that upon our review of the policy, the endorsement is the only portion of the general liability policy that mentions any coverage pertaining to automobiles, which, as stated above does not convert the policy into a motor vehicle liability policy.
[5] The Supreme Court of Ohio held that in order "[t]o satisfy the offer requirement of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer." Linko, supra at 447-448.