OPINION
 I. Facts/Procedural Posture {¶ 1} Intervenors-appellants, Carol and Phillip Shaner (hereinafter "the Shaners"), appeal the Auglaize County Court of Common Pleas grant of summary judgment in favor plaintiff-appellee, United Farm Family Mutual Insurance Company (hereinafter "United Farm"). For reasons that follow, we affirm.
 {¶ 2} Defendant-appellee, Michael N. Pearce, Jr. (hereinafter "Pearce"), owns and operates a blacktop business called "Blacktop Services." On October 18, 2006, Pearce was blacktopping a private driveway off of State Route 66 near St. Mary's, Ohio. Toward the evening hours and the end of the job, Pearce backed his dump truck up to the back of the driveway to unload some blacktop and finish the job. The dump truck was blocking State Route 66's northbound lane. Carol *Page 3 
Shaner was driving northbound on State Route 66, struck the dump truck, and was injured.
 {¶ 3} On November 15, 2006, the Shaners filed a complaint against Pearce, Blacktop Services, and Motorists Mutual Insurance Company[1]
alleging negligence and seeking damages sustained as a result of the accident. Sometime after the accident, Pearce notified United Farm of a potential claim by the Shaners under the commercial general liability (CGL) policy it issued for Blacktop Services. On October 4, 2007, United Farm filed a declaratory action with the trial court seeking a declaration of its rights and responsibilities under the policy. United Farm argued that it was not required to defend against claims or provide coverage, because bodily injury arising out of the ownership, maintenance, or use or entrustment to others of an "auto," as that term is defined in the policy, is excluded.
 {¶ 4} On October 31, 2007, the Shaners filed a motion to intervene in the declaratory action, and the trial court granted the motion on November 2, 2007. On March 27, 2008, United Farm filed a motion for summary judgment. On April 14, 2008, the Shaner's filed a memorandum in opposition to summary judgment. On April 17, 2008, the trial court granted United Farm's motion for summary judgment finding that the insurance policy excludes coverage because Pearce's *Page 4 
dump truck is an "auto" and not "mobile equipment," as those terms are defined in the policy.
 {¶ 5} On May 16, 2008, the Shaners filed a notice of appeal to this Court and now assert two assignments of error for review.
 II. Standard of Review {¶ 6} An appellate court reviews a grant or denial of summary judgment pursuant to Civ. R. 56(C) de novo. Wampler v. Higgins (2001),93 Ohio St.3d 111, 127, 752 N.E.2d 962, citing Doe v. Shaffer (2000),90 Ohio St.3d 388, 390, 738 N.E.2d 1243, citing Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. To prevail under Civ. R. 56(C), a party must show: (1) there are no genuine issues of material fact; (2) it appears from the evidence that reasonable minds can reach but one conclusion when viewing evidence in the nonmoving party's favor, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. Civ. R. 56(C);Shaffer, 90 Ohio St.3d at 390; Grafton, 77 Ohio St.3d at 105.
 {¶ 7} Material facts have been identified as those facts "that might affect the outcome of the suit under the governing law." Turner v.Turner (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 24891 L.Ed.2d 202, 106 S.Ct. 2505. "Whether a genuine *Page 5 
issue exists is answered by the following inquiry: Does the evidence present "a sufficient disagreement to require submission to a jury" or is it "so one-sided that one party must prevail as a matter of law[?]" Id., citing Liberty Lobby, Inc., 477 U.S. at 251-52.
 {¶ 8} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. Perez v. Scripts-HowardBroadcasting Co. (1988), 35 Ohio St.3d 215, 217, 520 N.E.2d 198. "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." Lakota Loc. SchoolsDist. Bd. of Edn. v. Brickner (1996), 108 Ohio App.3d 637, 643,671 N.E.2d 578.
 III. Analysis ASSIGNMENT OF ERROR NO. I The trial court erred in granting summary judgment finding that the commercial general liability policy of insurance excludes coverage for the injuries sustained by Carol Shaner on October 18, 2006.
 {¶ 9} In their first assignment of error, the Shaners argue that the trial court erred in granting summary judgment in favor of United Farm because it incorrectly determined that the dump truck was an "auto" and not "mobile equipment," as those terms are defined in the CGL policy. Specifically, the Shaners argue that the dump truck qualifies as "mobile equipment" under policy section V.11.d.(1) because the dump truck was maintained primarily to provide *Page 6 
mobility to a permanently mounted loader. The Shaners also argue that the dump truck qualifies as "mobile equipment" under policy section V.11.d.(2) because it was used to haul the roller. Finally, the Shaners argue that the dump truck qualifies as "mobile equipment" under policy section V.11.f. because it was maintained for purposes other than the transportation of cargo and persons.
 {¶ 10} "An insurance policy is a contract whose interpretation is a matter of law." Cincinnati Ins. Co. v. CPS Holdings, Inc.,115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, ¶ 7, citing Sharonville v. Am.Employers Ins. Co., 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. In determining a contract's interpretation, a reviewing court must give effect to the parties' intent. Id., citing Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. A contract is examined as a whole, and the court presumes that the parties' intent is reflected by the language of the policy. Id., citingKelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." Id., citing Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus. A contract is unambiguous as a matter of law if it can be given a definite legal meaning. Id., citing Gulf Ins. Co. v. BurnsMotors, Inc. (Tex. 2000), 22 S.W.3d 417, 423. *Page 7 
 {¶ 11} "Ambiguity in an insurance contract is construed against the insurer and in favor of the insured." Id. at ¶ 8, citing King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. However, a court should not apply this rule if it results in an unreasonable interpretation of the words of the policy. Id., citingMorfoot v. Stake (1963), 174 Ohio St. 506, 190 N.E.2d 573, paragraph one of the syllabus.
 {¶ 12} With the applicable rules of law in view, we now turn to the CGL policy language at issue in this case. The policy provides the following pertinent exclusion:
 g. Aircraft, Auto, or Watercraft
 "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or water craft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".
(CGL Policy Section I, 2.g.). The policy provides the following applicable definitions:
 2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".
 11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
 a. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;
 b. Vehicles maintained for use solely on or next to premises you own or rent; *Page 8 
 c. Vehicles that travel on crawler treads;
 d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
 (1) Power cranes, shovels, loaders, diggers, or drills; or
 (2) Road construction or resurfacing equipment such as graders, scrapers, or rollers;
 e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
 (1) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
 (2) Cherry pickers and similar devices used to raise or lower workers;
 f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
 (1) Equipment designed primarily for:
 (a) Snow removal;
 (b) Road maintenance, but not construction or resurfacing; or
 (c) Street cleaning;
 (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise and lower workers; and
 (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.
(CGL Policy Sections V, 2; V, 11).
 {¶ 13} The Shaners first argue that the dump truck qualifies as "mobile equipment" under policy section V.11.d.(1) because the dump truck was maintained primarily to provide mobility to a permanently mounted loader. We *Page 9 
disagree. The Shaners argue that the dump bed on the truck is a permanently mounted loader. "Loader" is not defined in the contract, so we must use the "ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument." State ex rel. Petro v. R.J. ReynoldsTobacco Co., 104 Ohio St.3d 559, 2004-Ohio-7102, 820 N.E.2d 910, ¶ 23, citing, Alexander, 53 Ohio St.2d 241, paragraph two of the syllabus. "Loader" is defined, in pertinent part as: "a device or machine used for loading * * *; a machine (as a belt or bucket conveyor or a power scoop shovel) that picks up loose material (as snow or gravel) and loads it upon a vehicle or into a container within the same unit." WEBSTER'S THIRD INTERNATIONAL DICTIONARY (2002) 1326. Pearce's dump truck, on the other hand, has a "dump body," which is defined as: "a motor-truck or trailer body that can be manipulated to discharge its contents by gravity." Id. at 701. Consequently, Pearce's dump truck does not have a "permanently mounted loader" as the Shaners argue; and therefore, it is not "mobile equipment" under section V, d., (1).
 {¶ 14} The Shaners also argue that the dump truck qualifies as "mobile equipment" under policy section V.11.d.(2) because it was used to haul the roller. We disagree. Although the dump truck was used to haul a roller, the roller was not "permanently mounted" to the dump truck, as required under section V.11.d(2). Pearce testified that he hauled various pieces of paving equipment, *Page 10 
including the roller, with the dump truck using a lowboy trailer.[2]
(May 10, 2007 Tr. at 32, 37-38). Pearce testified that he loaded these pieces of equipment onto the lowboy trailer, which indicates that the roller was not permanently mounted to the dump truck as required under section V.11.d(2). Therefore, the dump truck is not "mobile equipment" as the term is defined under subsection V.11.d(2) either.
 {¶ 15} The Shaners next argue that the dump truck qualifies as "mobile equipment" under policy section V.11.f. because it was "maintained primarily for purposes other than the transportation of persons or cargo." In support of their argument, the Shaners contend that the word "maintained" requires that the court examine how the vehicle at issue was used by the owner, regardless of its intended design. Although we agree with the Shaners that a vehicle may be maintained for purposes different than its intended design, we cannot agree that the dump truck was "maintained primarily for purposes other than the transportation of persons or cargo." (Section V.11.f.). Pearce testified that he used the dump truck primarily to haul asphalt and equipment to the job site. Pearce testified:
 Q: Okay. So you buy [the asphalt], your dump truck goes there, loads it and then takes it to the job site?
 A: Yeah. And the dump truck also is what pulls the equipment, too.
 * * * *Page 11 
 Q: Sometimes the dump truck will take the equipment there, leave, go get the asphalt and then come back?
 A: Yeah.
 Q: Okay. And when the dump truck gets to the job site, does it then unhitch from the Lowboy?
 A: Yes.
 * * *
 Q: Okay. So the dump truck then transports the equipment on the Lowboy and it also loads and unloads the asphalt. Does it do anything else?
 A: I don't know. I don't think so.
 Q: In the course of your business, does it serve any other purpose?
 A: No, that's about it.
(May 10, 2007 Tr. at 37-40). "Cargo" is defined as "the lading or freight of a ship, airplane, or vehicle: the goods, merchandise, or whatever is conveyed; LOAD, FREIGHT — usu. used of goods only and not of live animals or persons." WEBSTER'S THIRD INTERNATIONAL DICTIONARY (2002) 339. "Goods" are "tangible movable personal property having intrinsic value * * *" Id. at 978. "Convey" means "to bear from one place to another: CARRY, TRANSPORT." Id. at 449. Asphalt and equipment fall within the definition of a good, and thus, cargo. According to the record, then, the dump truck was maintained primarily for the transportation of cargo; and therefore, is not "mobile equipment" under Section V.11.f.
 {¶ 16} The dump truck is an "auto" as that term is defined in the policy; and therefore, the injuries sustained by Carol Shaner are excluded from coverage. The dump truck was designed for travel on the public roads. It was registered with the *Page 12 
Bureau of Motor Vehicles (BMV), and its operator was required to have a commercial driver's license. (May 10, 2007 Tr. at 34, 24). Furthermore, Pearce's testimony indicates that he used the dump truck to haul asphalt and equipment to the job site, which, by necessity, would require that the dump truck travel on public roads. (May 10, 2007 Tr. at 37-40). Accordingly, the dump truck is an "auto" as defined in the CGL policy and is not "mobile equipment" as defined in the CGL policy. As an additional matter, Pearce obtained a separate automobile liability policy to cover the dump truck, and the CGL policy did not list the dump truck on the scheduled list of equipment. (Do. No. 20, Exs. C, D). These two facts, though not dispositive, certainly indicate that it was the parties' intention that the dump truck not be covered under the CGL policy. Since the dump truck is an "auto" and not "mobile equipment," any "bodily injury" or "property damage" arising out of its ownership, maintenance, use or entrustment to others is excluded from coverage. (CGL Policy Section I, 2, g.). Therefore, the trial court did not err in granting summary judgment in United Farm's favor.
 {¶ 17} The Shaners' first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred in following Brookman v. Estate of Gray (3rd District, December 22, 2003), Allen County Case No. 1-03-38, 2003-Ohio-6994.
 {¶ 18} In their second assignment of error, the Shaners argue that the trial court erroneously relied upon Brookman v. Estate of Gray, 3d Dist. No. 1-03-38, *Page 13 2003-Ohio-6994. Specifically, the Shaners contend that Brookman dealt with UM/UIM coverage and a claim pursuant to Scott-Ponzer v. LibertyMut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116 wherein the court found that the policy at issue was not a "motor vehicle liability policy" as defined by R.C. 3937.18(L)(1). The Shaners argue that this policy is considered a "motor vehicle liability policy" "because it specifically provides insurance coverage for "mobile equipment," including Mr. Pearce's dump truck." (Appellant's Brief at 9).
 {¶ 19} These arguments lack merit. This Court in Brookman held that the CGL policy in that case was not a "motor vehicle policy" under R.C. 3937.18(L)(1) for purposes of plaintiff s UM/UIM claim, because the policy failed to specifically identify any motor vehicles to be covered under it. 2003-Ohio-6994, at ¶ 8. The parties do not dispute that the facts in Brookman are distinguishable from the case at bar; however, United Farm argues, and we agree, that Brookman's holding is, at least, persuasive here. The plaintiff in Brookman attempted to extend her employer's CGL policy to motor-vehicles in order to assert her claims. Id. at ¶ 3. Likewise, the Shaners are arguing that "the CGL policy is considered a `motor vehicle liability policy' because it specifically provides coverage for `mobile equipment,' including Mr. Pearce's dump truck." (Appellant's Brief at 9). Furthermore, like the CGL policy inBrookman, the United Farm policy does not specifically identify Pearce's dump truck. Furthermore the CGL policy expressly excludes coverage for "autos," and Pearce *Page 14 
obtained a separate automobile liability policy for the dump truck. (Doc. No. 20, Exs. C, D). Under these circumstances, the Shaners cannot extend the CGL policy's coverage to include Pearce's motor vehicle just as the plaintiffs in Brookman could not extend their employer's CGL policy to include motor vehicles. Therefore, the trial court did not err in relying upon our opinion in Brookman.
 {¶ 20} Furthermore, even if this Court determined that the trial court erroneously relied upon Brookman, "[a] judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant." Bonner v. Bonner, 3d Dist. No. 14-05-26, 2005-Ohio-6173, ¶ 18, citing Lust v. Lust, 3d Dist. No. 16-02-04, 2002-Ohio-3629, ¶ 32; Smith v. Flesher (1967),12 Ohio St.2d 107, 110, 233 N.E.2d 137. This Court has reviewed the record and concluded that the trial court did not err in granting summary judgment in United Farm's favor based on the contract's language. Thus, the Shaners have not suffered prejudice because of the trial court's reliance upon Brookman, even if such reliance was erroneous.
 {¶ 21} The Shaner's second assignment of error is, therefore, overruled. *Page 15 
 IV. Conclusion {¶ 22} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and ROGERS, J., concur.
[1] The complaint named several "John Does" as well. It is unclear from the record herein whether the complaint was later amended to add United Farm or whether Motorists Mutual Ins. Co. is a subsidiary of United Farm. However, it appears that United Farm issued a separate motor vehicle insurance policy for Pearce's dump truck. (Doc. No. 20, Ex. C).
[2] Although Pearce did not specifically use the term "trailer," it is apparent from the context of his testimony that he was referring to a type of trailer, which was "hitched" to the dump truck for purposes of hauling the paving equipment. (May 10, 2007 Tr. at 32, 37) *Page 1