[Cite as *Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 183 Ohio App.3d 29, 2009-Ohio-2526.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

BOSSERMAN AVIATION
EQUIPMENT, INC.,

      APPELLEE,

                         CASE NO. 5-09-05

      v.

UNITED STATES LIABILITY
INSURANCE COMPANY,

      APPELLANT;

                         O P I N I O N

WILLIAMS,

      APPELLEE.

---

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2008 CV 217**

**Judgment Affirmed**

**Date of Decision:    June 1, 2009**

---

APPEARANCES:

    **Steven C. Betts, for appellee Bosserman Aviation Equipment, Inc.**

    **Emily W. Newman, for appellant.**

    **Bernard Bauer, for appellee Benjamin Williams.**

**ROGERS, Judge.**

**{¶1}** Defendant-appellant, United States Liability Insurance Co. ("U.S. Liability"), appeals the judgment of the Hancock County Court of Common Pleas denying its motion for summary judgment and granting summary judgment in favor of Bosserman Aviation Equipment, Inc. ("Bosserman"). On appeal, U.S. Liability argues that the trial court erred in denying its motion for summary judgment and granting Bosserman's summary-judgment motion, as the pollution-exclusion clause contained within its insurance policy with Bosserman clearly and unambiguously precludes coverage for an employee who sustained bodily injuries as a result of a discharge or escape of pollutants caused by the insured. Based on the following, we affirm the judgment of the trial court.

**{¶2}** In March 2008, Bosserman filed a declaratory-judgment action against U.S. Liability, demanding that U.S. Liability provide insurance coverage and legal defense pursuant to the parties' insurance policy for an intentional-tort claim brought against it by Benjamin Williams, a former employee of Bosserman.[1] The intentional-tort claim asserted by Williams alleged that during the course and within the scope of his employment with Bosserman, he was exposed to benzine and other harmful chemical agents contained in aircraft fuel while reconditioning and repairing aircraft-refueling equipment, causing him to develop aplastic

---

[1] We note that Williams was also named as a defendant in the declaratory judgment action by Bosserman, as he also had an interest in enforcing the insurance policy.

anemia. Williams further asserted that due to Bosserman's knowledge of the potential harm of regular and continuous exposure to these contaminants, and its failure to provide adequate training and warnings regarding the exposure to the contaminants and proper safety equipment to protect against the harmful effects of the contaminants, Bosserman was liable for his lost wages and medical expenses in excess of $25,000.

{¶3} Subsequently, Williams filed a cross-claim against U.S. Liability, asserting that he is entitled to coverage under the insurance policy between U.S. Liability and Bosserman.

{¶4} In August 2008, U.S. Liability filed a motion for summary judgment against both Bosserman and Williams, stating that Bosserman is not entitled to coverage for Williams's claim pursuant to the language of the policy, which excludes coverage for bodily injury arising from the discharge, dispersal, seepage, migration, release, or escape of pollutants at or on the premises owned by Bosserman, and that Williams lacks standing to bring a cross-claim, as Ohio law precludes an injured party from directly suing the insurer of a tortfeasor because the injured party is not deemed to be a third-party beneficiary to the liability-insurance contract. Attached to the summary-judgment motion was a copy of the insurance contact, which provided the following:

2. Exclusions

This insurance does not cover:
* * *
F. "bodily injury" arising from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants:
(1)     at or from any premises, site or location that is or was at any time owned or occupied by or rented or loaned to any insured;
(2)     at or from any premises, site or location that is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste or pollutants;
(3)     which are or were at any time transported, handled, stored, treated, disposed of or processed as waste or pollutants by or for any insured or any person or organization for whom the "named insured" may be legally responsible; or
(4)     at or from any premises, site or location on which any insured or any contractor or subcontractor working directly or indirectly on any insured's behalf in performing operations:
> (a)     if the pollutants are brought to the premises, site or location in connection with such operations by the insured, contractor or subcontractor, or
> (b)     if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of pollutants.
* * *
Pollutants means any solid, liquid, gaseous, or thermal irritant contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste (which includes materials to be recycled, reconditioned or reclaimed) * * *


{¶5}   In September 2008, the trial court ordered the filing of Williams's deposition taken during the litigation for his intentional-tort claim against Bosserman.  In his deposition, Williams stated that his job at Bosserman consisted of repairing tanks and parts of vehicles that were used to provide fuel to aircrafts;

that while working on the vehicles, he was exposed to aircraft fuel on several occasions when it was drained out of hoses or tanks and into drain pans, including when it sometimes spilled on the floor; that he could smell the aircraft fuel when it was in the drain pans if he was in the proximity of the pans; that the smell of aircraft fuel did not permeate the building, and he would have to walk within five or eight feet of the fuel to smell it; that he was also required to go inside fuel tanks and drill various holes and mount fittings; that while he was in the tanks, there would sometimes be aircraft fuel residue at the bottom, which would get on his boots, clothes, and hands; that he spent anywhere from fifteen minutes to an hour and a half inside the tanks on each occasion, and that there were around ten occasions when he was inside a tank that contained aircraft fuel; and that the only other chemicals he came in contact with while employed at Bosserman were aluminum cleaner, airplane paint stripper, and a chemical called Brake Clean, all of which he used to perform various job tasks.

{¶6} In February 2009, the trial court denied U.S. Liability's motion for summary judgment against Bosserman, granted U.S. Liability's motion for summary judgment against Williams's cross-claim on the basis that Williams lacked standing, and granted Bosserman's motion for summary judgment. The trial court stated the following in its judgment entry:

> The issue before the Court is whether the pollution exclusion language precludes coverage, as a matter of law, for the alleged

injuries suffered by Williams. Based on the terminology used in the exclusion, and its interpretations by other courts, this Court concludes that, as a matter of law, the policy exclusion does not exclude coverage for injury resulting from exposure to fuel fumes in a confined area in the workplace.

* * *

The language at issue in this case is commonly referred to as an "absolute pollution exclusion." See *Selm v. Am. States Ins. Co.* (1st Dist. Sept. 21, 2001), Hamilton County No. C-10057, 2001 WL 1103509, *3 * * *. The Supreme Court of Ohio considered the pollution exclusion in the context of carbon monoxide from a faulty residential heater. See *Andersen* [*v. Highland House Co.* (2001),] 93 Ohio St.3d 547, * * * 757 N.E.2d 329. The "genesis" of the exclusion was to exclude intentional polluters from protection from the results of their improper or illegal conduct. * * * The *Andersen* Court then noted that, based on the purpose and history of that exclusion, the insured could reasonably believe that residential situations would not be excluded unless the insurer specified the exclusion. * * *

* * *

The *Andersen* syllabus states: "Carbon monoxide emitted from a residential heater is not a 'pollutant' under the pollution exclusion of a commercial general liability insurance policy unless specifically enumerated as such." *Andersen*, 93 Ohio St.3d at 547. * * *

The pollution exclusion clause has been interpreted "to be clear and unambiguous in precluding coverage for claims arising from pollution." *Selm*, 2001 WL 1103509, at *3. The question remains in each of the cases whether the language is unambiguous as to the circumstances of the alleged injury. * * *

In the first case cited by Bosserman, the court addressed the issue of interpreting the terms of the pollution exclusion that required a "discharge, dispersal, release or escape" of the pollutant. *Lumbermens Mut. Cas. Co. v. S-W Industries Inc.* (6th Cir. 1994) 39 F.3d 1324, 1336 (applying Ohio law). * * * [T]he *Lumbermens*

court analyzed the "dispersal" language: "It strains the plain meaning, and obvious intent, of the language to suggest that these fumes, as they went from the container to [the injured party's] lungs, had somehow been 'discharged, dispersed, released or escaped." *Id.* at 1336. The *Lumbermens* court defined each of the similar terms, i.e., "discharge, dispersal, release or escape," to conclude that the confinement of the fumes in the immediate work area did not fit those definitions, even if the injurious product was a "pollutant." *Id.* Defendant U.S. Liability argues that the "atmosphere" clause contained in the *Lumbermens* policy, which is not included in the policy at issue in the present case, makes that case distinguishable from the case before this Court. That distinction has been addressed by the *Lumbermens* court in a later decision, on which Bosserman also relies. See *Meridian Mut. Ins. Co. v. Kellman*, (6th Cir. 1999), 197 F.3d 1178, 1184.

* * * The *Meridian* court concluded "that the total pollution exclusion clause at bar does not shield the insurer from liability for injuries caused by toxic substances that are still confined within the general area of their intended use." *Id.* * * * [T]hat panel, like the *Lumbermens* court, determined that the "localized injury" did not amount to a "discharge, dispersal, seepage, migration, release or escape of pollutants" under the exclusion language. *Id.* at 1185.

* * * Given the *Andersen* decision, U.S. Liability cannot establish that its interpretation " 'is the only one that can be fairly placed on the language in question.' " *Id.* at 549 (citation omitted). The Court therefore concludes that aircraft fuel fumes that are confined to the tanker during repairs, as alleged in this action, are not "pollutants" under the exclusion clause.

The Court further concludes, as an additional and alternative basis for its decision, that there is no allegation of the "discharge, dispersal, seepage, migration, release or escape" of the aircraft fuel or its fumes. * * * "A 'discharge' is defined as a 'flowing or issuing out.' To 'disperse' is defined as 'to cause to breakup and go in different ways'; 'to cause to become spread widely.' A 'release' is defined as 'the act of liberating or freeing: discharge from restraint.' An 'escape' is defined as an 'evasion of or deliverance from what confines, limits, or holds.'" *Lumbermens*, 39 F.3d at 1336, quoting

Webster's Third New Internat'l Dictionary (1986), 644, 653, 1917, 774. * * * Like the localized injury in the *Meridian* case, Williams' alleged injury resulted from his presence in the immediate area of the fumes, in a confined space where the fuel was retained in its proper site. Thus, the Court can only conclude that the aircraft fuel and/or fumes were not discharged, dispersed, or released, nor did they seep or migrate to a place where they did not belong or where they were not intended to be.

* * *

Based on the foregoing analysis, the Court concludes that reasonable minds could come to only one conclusion and that conclusion is adverse to U.S. Liability on the issue of the application of the pollution exclusion clause. The Court therefore concludes that, as a matter of law, Bosserman is entitled to summary judgment in its favor.

{¶7} It is from this judgment that U.S. Liability appeals, presenting the following assignment of error for our review:

The trial court erred in denying appellant's motion for summary judgment in part, and instead granting summary judgement [sic] in favor of appellee Bosserman Aviation Equipment, Inc. As it relates to the "pollution exclusion clause" in the applicable insurance policy.

{¶8} In its sole assignment of error, U.S. Liability argues that the trial court erred in denying its motion for summary judgment and granting summary judgment to Bosserman. Specifically, U.S. Liability asserts that the clear and unambiguous language of the pollution-exclusion clause in the insurance contract precludes coverage for the injuries suffered by Williams, as his injuries arose as

the result of exposure to aircraft fuel through fuel spills and his work on tanks containing a residual amount of fuel.  We disagree.

{¶9}   An appellate court reviews a summary-judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination.  *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222.  Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, (2) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, and, therefore, (3) the moving party is entitled to judgment as a matter of law.  Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686-687.  If any doubts exist, the issue must be resolved in favor of the nonmoving party.  *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359.

{¶10} The party moving for summary judgment has the initial burden of producing some evidence that demonstrates the lack of a genuine issue of material fact.  *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293.  In doing so, the moving

party is not required to produce any affirmative evidence, but must identify those portions of the record that affirmatively support his argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.; Civ.R. 56(E).

{¶11} "A policy of insurance is a contract and like any other contract is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Dealers Dairy Prods. Co. v. Royal Ins. Co*. (1960), 170 Ohio St. 336, paragraph one of the syllabus. Courts are not permitted to rewrite the language of a contract when the intent of the parties is evident through the clear and unambiguous contractual provisions. *Hybud Equip. Corp. v. Sphere Drake Ins. Co. Ltd.* (1992), 64 Ohio St.3d 657, 665. Additionally, " '[w]here exceptions * * * are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.' " *Andersen v. Highland House Co*. (2001), 93 Ohio St.3d 547, 549, quoting *Home Indemn. Co. of New York v. Plymouth* (1945), 146 Ohio St. 96, paragraph two of the syllabus. Accordingly, in order for an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to

-10-

give it, and that such construction is the only one that can be fairly placed upon the language.  Id. at 549.  " 'The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect.' "  *Beaverdam Contracting v. Erie Ins. Co.,* 3d Dist. No.  1-08-17,  2008-Ohio-4953, ¶18, quoting *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65.

**{¶12}** Furthermore, when an insurance policy contains ambiguous language, it is interpreted against the insurer and in favor of the insured unless such an interpretation results in an unreasonable construction of the policy. *United Farm Family Mut. Ins. Co. v. Pearce*, 3d Dist. No. 2-08-07, 2008-Ohio-5405, ¶11, citing *Cincinnati Ins. Co. v. CPS Holdings, Inc.,* 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 7.

**{¶13}** The party seeking to recover under an insurance policy bears the burden of proof to demonstrate that the policy provides coverage for the particular loss. *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270, 273.  However, "when an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion." *Beaverdam Contracting,* 2008-Ohio-4953, at ¶19, citing *Continental Ins. Co. v. Louis Marx & Co., Inc.* (1980), 64 Ohio St.2d 399, syllabus.

{¶14} In the case at bar, U.S. Liability contends that the injuries Williams suffered when exposed to aircraft fuel while employed at Bosserman are exempted from coverage under the insurance policy because the absolute pollution-exclusion provision contained within the policy excludes coverage for bodily injury "arising from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants."

{¶15} An absolute pollution-exclusion clause similar to the clause in this case was discussed and interpreted by the Supreme Court of Ohio in *Andersen*, 93 Ohio St.3d 547. In *Andersen*, a landlord and apartment manager brought a declaratory-judgment action against the insurance company seeking coverage under the policy for the accidental death and injury of two apartment residents due to carbon monoxide emitted from a faulty heater. The insurance company claimed that coverage was excluded under the policy due to an absolute pollution-exclusion clause that provided that the insurance policy did not cover " '[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants * * * [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured." Id. at 548. In concluding that the pollution-exclusion clause failed to affirmatively and unambiguously exclude coverage for carbon-monoxide-related injuries and death and that carbon

monoxide was not a "pollutant" within the ambit of the exclusion, the court found

that the history and purpose of these pollution-exclusion clauses promoted a

reasonable belief on the part of the landlord and apartment manager that the policy

would not exclude coverage for carbon-monoxide poisoning:

> Furthermore, the genesis of the pollution exclusion does not support the notion that it was created to preclude the kind of claim involved in this case. In June 1970, the insurance industry "went on record as being 'against' intentional polluters and promulgated the qualified pollution exclusion for insertion in all comprehensive general liability (CGL) insurance policies." (Footnotes omitted.) Reiter, Strasser & Pohlman, *supra,* 59 U.Cin.L.Rev. at 1168. The insurance industry explained that "[a]ccidental pollution continued to be insured under a CGL policy, but deliberate polluters would remain uncovered, unable to use insurance to avoid the financial consequences of their acts. On the basis of these representations, nearly every state, including Ohio, allowed the introduction of this new, qualified pollution exclusion." (Footnotes omitted.) *Id*.

> The exclusion disputed in the case at bar, the absolute pollution exclusion, "was drafted during the early 1980s and was incorporated into the standard form CGL [policies] in 1986." Stempel, Reason and Pollution: Correctly Construing the "Absolute" Exclusion in Context and in Accord With Its Purpose and Party Expectations (1998), 34 Tort & Ins.L.J. 1, 5.   * * * Further, "[t]he absolute exclusion was designed to bar coverage for gradual environmental degradation of any type and to preclude coverage responsibility for government-mandated cleanup[s]." *Id*.

Id. at 549-550. Furthermore, the court stated:

> "We would be remiss * * * if we were to simply look to the bare words of the exclusion, ignore its *raison d'etre,* and apply it to situations which do not remotely resemble traditional environmental contamination."

Id. at 552, quoting *Am. States Ins. Co. v. Koloms* (1997), 177 Ill.2d 473, 492-493.

{¶16} Additionally, in *Lumbermens Mut. Cas. Co. v. S-W Industries, Inc.* (C.A. 6, 1994), 39 F.3d 1324, the Sixth Circuit Court of Appeals applied Ohio law to determine that a pollution-exclusion clause did not preclude coverage for an employee's intentional-tort claim against his employer for injuries he sustained when exposed to toxic chemicals and dust while working in the employer's factory. In *Lumbermens*, the employee contracted a severe lung disease as the result of working around toxic cements, solvents, and dust while employed to cement strips of rubber onto rotating drums in a factory. The pollution-exclusion clause contained within the insurance contract between the employer and the insurer provided as follows:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants, into or upon land, the atmosphere, or any watercourse or body of water;

Id. at 1336.

{¶17} In analyzing the clause, the court set out the definitions of discharge, dispersal, release, and escape to determine whether the employee's exposure to toxic chemicals while working in the factory arose through one of those means in order for the exclusion to apply.

> A "discharge" is defined as "a flowing or issuing out." To "disperse" is defined as "to cause to breakup and go in different ways"; "to cause to become spread widely." A "release" is defined

-14-

as "the act of liberating or freeing: discharge from restraint." An "escape" is defined as an "evasion of or deliverance from what confines, limits, or holds."

Id., citing Webster's Third New International Dictionary (1986) 644, 653, 1917, 774.

{¶18} Applying the facts to these definitions, the court concluded that the pollution-exclusion clause did not preclude coverage for the employee's injuries, as the fumes and dust to which he was exposed were confined to the portion of the plant in which the employee worked and had not been "discharged, dispersed, released or escaped" as provided in the exclusion. The court reasoned that "this exclusion is intended to shield the insurer from the liabilities of the insured to outsiders, either neighboring landowners or governmental entities enforcing environmental laws, rather than injuries caused by toxic substances that are still confined within the area of their intended use." Id.

{¶19} In analyzing the facts of this case to the law set forth under *Andersen* and *Lumbermens*, we conclude that the pollution-exclusion clause did not clearly and unambiguously exclude coverage for the injuries sustained by Williams. First, we find dispositive the Supreme Court of Ohio's discussion of the history of pollution-exclusion clauses and their intended purpose, namely, to preclude coverage for traditional environmental contamination. Although the court in *Andersen* found that carbon monoxide did not amount to a pollutant under the

exclusion, the basis for that conclusion was a concern about precluding coverage for factual situations outside the reasonable expectation of the exclusion. See *Southside River-Rail Terminal, Inc. v. Crum & Forster Underwriters of Ohio*, 157 Ohio App.3d 325, 2004-Ohio-2723, ¶ 38-41 (stating that *Andersen* stands for the idea that injuries resulting from an event that does not resemble traditional environmental contamination do not fall within the protection of a pollution-exclusion clause and that *Andersen* does not stand for the proposition that these pollution-exclusion clauses are too broad to be enforceable). Although it is clear that aircraft fuel would fall within the traditional definition of a pollutant for purposes of this exclusion, it is equally clear that Williams's exposure to the fuel while conducting tasks within the normal course of his job duties in the confines of his workplace was outside the reasonable expectation of the exclusion, as such exposure is not analogous to the traditional environmental contamination to which the clause was intended to apply.

{¶20} Second, we find to be persuasive *Lumbermens'* conclusion that a pollution-exclusion clause of this nature does not apply to an exposure to toxic chemicals confined within an employee's work area, as there is no discharge, dispersal, release, or escape of pollutants. Here, the evidence demonstrated that Williams was exposed to aircraft fuel and its fumes over a period of several months while working in fuel tanks and when occasionally encountering fuel that

had been drained out of tanks or hoses and into drain pans. The evidence also establishes that any exposure to fumes was limited to certain confined areas where Williams worked, namely, in fuel tanks and around drain pans, as he testified that the smell of fuel did not permeate the building and that he could not smell the fuel unless he was within five to eight feet of it. Accordingly, we find that Williams's extended exposure to pollutants, namely aircraft fuel, was not the result of any "discharge, dispersal, seepage, migration, release, or escape" as provided in the clause. It would strain the logical and reasonable interpretation of those words for us to find otherwise.

{¶21} Finally, we note that U.S. Liability argues that there were occasions when Williams was exposed to fuel due to spills, and, as such, that this constitutes a discharge or release of pollutants that brings Williams's injuries within the exception to coverage contained within clause. However, the evidence establishes that these spills were not a regular occurrence and were only minor spills from a drain pan onto the floor that did not rise to the level of a "discharge, dispersal, seepage, migration, release, or escape."

{¶22} Because we find that this pollution-exclusion clause did not clearly and unambiguously exclude coverage for injuries sustained as the result of prolonged exposure to aircraft fuel within the normal course of an employee's performance of his job duties and within the limited confines of an employee's

work area, we find that U.S. Liability has failed to meet its burden to show the clear application of the exclusion, and, therefore, we must interpret the contract in favor of Bosserman as providing coverage for Williams's injury.

{¶23} Accordingly, we find that the trial court did not err in denying U.S. Liability's summary-judgment motion and granting summary judgment to Bosserman. Consequently, we overrule U.S. Liability's assignment of error.

{¶24} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

PRESTON, P.J. and SHAW, J., concur.

_____