[Cite as *Crow v. Dooley*, 2012-Ohio-2565.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

CHLOE CROW, ET AL.,

    PLAINTIFFS-APPELLEES,

    -and-                        CASE NO. 1-11-59

UNITED OHIO INSURANCE COMPANY,

    PLAINTIFF-APPELLANT,

    v.                              **O P I N I O N**

JOSHUA D. DOOLEY, ET AL.,

    DEFENDANTS-APPELLEES.

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV20100627**

**Judgment Reversed**

**Date of Decision:**

---

APPEARANCES:

    *John P. Petro and Susan S.R. Petro* **for Appellant, United Ohio**
              **Insurance Company**

    *David W. Marquis* **for Appellees, Chloe Crowe, et al.**

    *F. Stephen Chamberlain and Van P. Andres* **for Appellee, Carolyn**
          **Sue Dooley**

    *Joshua D. Dooley*, **Appellee**

**ROGERS, J.**

{¶1} Intervening Plaintiff-Appellant, United Ohio Insurance Company ("UOIC") appeals the judgment of the Court of Common Pleas of Allen County denying its motion for summary judgment. On appeal, UOIC argues that the trial court erred by holding that the negligent actions of Defendant, Carolyn Dooley, were covered by her insurance policy with UOIC due to the application of *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718. Based on the following, we reverse the judgment of the trial court.

{¶2} The instant action arose out of the following series of events, not disputed on appeal. In October 2008, Plaintiff Chloe Crow ("Chloe"), a child, was under the care of Defendant Carolyn Dooley ("Carolyn") as part of Carolyn's home daycare operations, when Carolyn's adult son, Defendant Joshua Dooley ("Joshua"), raped and photographed Chloe. Joshua was indicted on two counts of rape of a child and two counts of pandering obscenity. Joshua pled guilty to two counts of rape and was sentenced to fifty years to life.

{¶3} In June 2010, Chloe, her parents, and siblings (collectively, "the Plaintiffs") filed the instant civil action, seeking compensatory and punitive damages, against Joshua and Carolyn. Specifically, the Plaintiffs sought redress for Joshua's intentional actions of rape, sexual battery, sexual assault, and sexual molestation of Chloe and for taking photographs of her while she was in a state of

nudity and posting them on the internet. The Plaintiffs sought redress from Carolyn for breach of fiduciary duty, negligence, negligent supervision/failure to protect, respondeat superior, intentional infliction of emotional distress, loss of consortium, corrupt activities, and libel for her failure to properly supervise Joshua and protect Chloe, as well as her alleged attempts to conceal the criminal activity.

{¶4} In August 2010, the trial court granted UOIC's motion to intervene. UOIC alleged in its complaint for declaratory judgment that it had no duty to defend or indemnify Joshua and/or Carolyn as they are either not covered or are excluded from coverage pursuant to Carolyn's homeowner's insurance policy with UOIC. Carolyn filed an answer arguing that UOIC does have a duty to defend and indemnify her. Joshua failed to file an answer. UOIC filed a motion for summary judgment and a memorandum in support arguing that it owes no duty to defend or indemnify Carolyn and/or Joshua as Carolyn's insurance policy with UOIC ("the Policy") does not cover emotional injury or alleged physical injury arising from emotional distress, intentional acts, non-accidental behavior, expected or intended injuries, and/or injury arising out of sexual molestation. The Plaintiffs and Carolyn filed their respective memoranda in contra arguing that genuine issues of material fact existed and requesting the trial court to deny UOIC's motion for summary judgment.

{¶5} On September 29, 2011, the trial court granted summary judgment in part and denied it in part. Specifically, the trial court declared that the insurance policy: (1) does not cover Joshua or Carolyn for emotional injuries, (2) excludes Joshua's intentional acts of sexual molestation from coverage, and (3) covers Carolyn for the claims of negligence against her. In other words, the trial court held that UOIC is not required to defend or indemnify Joshua for any claims against him, but that UOIC is required to defend and/or indemnify Carolyn for the negligence claims only. It is from this judgment UOIC timely filed its notice of appeal asserting the following assignment of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT ERRED IN CONCLUDING THAT UNDER *SAFECO INS. CO. OF AM. V. WHITE* THE INSURANCE POLICY EXCLUSION FOR "'[B]ODILY INJURY' OR 'PROPERTY DAMAGE' ARISING OUT OF SEXUAL MOLESTATION . . ." DOES NOT PRECLUDE COVERAGE FOR AN ALLEGEDLY NEGLIGENT INSURED AND, THUS, THAT POLICY NO. SHO274728 COVERS DEFENDANT CAROLYN SUE DOOLEY FOR THE CLAIMS MADE AGAINST HER IN THE ABOVE CAPTIONED ACTION.**

{¶6} In its sole assignment of error, UOIC alleges that the trial court erroneously concluded that UOIC must extend coverage to Carolyn under the insurance policy pursuant to *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718.

{¶7} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist. 1999). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶8} An insurance policy is a contract, and its interpretation is a matter of law for the court. *Sharonville v. Am. Emps. Ins. Co.,* 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6. The coverage under an insurance policy is determined by construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 211 (1988). Contract terms are to be given their plain and ordinary meaning, *Dunson v. Home–Owners Ins. Co.*, 3d Dist. No. 5-09-37, 2010-Ohio-1928, ¶ 13, citing *King*, and when the contract is clear and unambiguous, the court 'may look no further than the four corners of the

insurance policy to find the intent of the parties.'" *McDaniel v. Rollins*, 3d Dist. No. 1-04-82, 2005-Ohio-3079, ¶ 32, citing *Tuthill Energy Systems v. R.J. Burke Ins. Agency*, 3d Dist. No. 2-03-25, 2004-Ohio-1394, ¶ 7, *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Id.*, citing *Progressive Max. Ins. Co. v. Monroe*, 3d Dist. No. 3-03-28, 2004-Ohio-1852, ¶ 12, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11.

{¶9} However, when a portion of an insurance contract is reasonably susceptible of more than one interpretation, it will be strictly construed against the insurer and in favor of the insured. *Niemeyer v. W. Res. Mut. Cas. Co.*, 3d Dist. No. 12-09-03, 2010-Ohio-1710, ¶ 9, citing *King* at syllabus. The reviewing court may then examine extrinsic evidence to determine the intent of the parties if a contract is ambiguous. *McDaniels* at ¶ 33, citing *Galatis*. Nevertheless, this rule of insurance-policy interpretation will not be applied in an unreasonable manner. *Galatis* at ¶ 14.

{¶10} Furthermore, when an insurance contract contains exceptions to coverage, there is a presumption that all coverage applies unless it is clearly excluded in the contract. *Bosserman Aviation Equip. v. U.S. Liab. Ins. Co.*, 183 Ohio App.3d 29, 2009-Ohio-2526, ¶ 11 (3d Dist.), citing *Andersen v. Highland*

*House Co.*, 93 Ohio St.3d 547, 549 (2001). "Accordingly, in order for an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language." *Id*.

{¶11} The party seeking to recover under an insurance policy bears the burden of demonstrating that the policy provides coverage for the particular loss. *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 87 Ohio St.3d 270, 273 (1999). However, "when an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion." *Beaverdam Contracting, Inc. v. Erie Ins. Co.*, 3d Dist. No. 1-08-17, 2008-Ohio-4953, ¶ 19, citing *Continental Ins. Co. v. Louis Marx & Co.*, 64 Ohio St.2d 399 (1980), syllabus.

{¶12} In the present case, the relevant policy provisions are as follows:

SECTION II – LIABILITY COVERAGES
A.   Coverage E – Personal Liability
If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury"[1] or "property damage"[2] caused by an "occurrence"[3] to which this coverage applies, we will:

---

[1] "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.  Policy p.1, DEFINITIONS B. 2.

[2] "Property damage" means physical injury to, destruction of, or loss of use of tangible property.  Policy, p.2 DEFINITIONS B. 9.

[3] "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in "bodily injury" or "property damages."  Policy, p.2 DEFINITIONS B. 8.

1.     Pay up to our limit of liability for the damages for which an "insured" is legally liable.  Damages include prejudgment interest awarded against an "insured'; and

2.     Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

* * *

SECTION II – EXCLUSIONS

* * *

E. Coverage E – Personal Liability * * *

Coverages E and F do not apply to the following:

1.     **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

a.     Is of a different kind, quality or degree than initially expected or intended; or

b.     Is sustained by a different person, entity, real or personal property, than initially expected or intended.

* *

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse * * *

**{¶13}** Given the foregoing language, UOIC must defend and indemnify Carolyn for the negligence claims against her if the alleged negligence is considered an "occurrence" under Section II – A, coverage for personal liability

-8-

and also not precluded by the Section II – E. 1. Expected or Intended Injury ("Expected/Intended Injury") or 7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse ("Sexual Molestation") exclusions. On appeal, the parties do not dispute that the negligence claims against Carolyn are considered "occurrences" and therefore are covered under Section II – A. The parties dispute, however, whether the claims of negligence fall under one of the exclusionary provisions for Expected/Intended Injury or Sexual Molestation. We hold that the claims of negligence against Carolyn are not precluded from coverage by the Expected/Intentional Injury exclusion but are precluded from coverage under the Sexual Molestation exclusion.

*Expected/Intentional Injury Exclusion*

{¶14} The unambiguous language of the Expected/Intentional Injury exclusion precludes coverage for bodily injury that was expected by or caused intentionally (not negligently) by an insured. Because the causes of action against Carolyn at issue sound in negligence, the Expected/Intentional Injury exclusion does not preclude coverage for these causes of action. In other words, the mental state excluded by the Expected/Intentional Injury provision, does not apply to negligence.

*Sexual Molestation Exclusion*

**{¶15}** The unambiguous language of the Sexual Molestation provision, however, does preclude coverage for the claims of negligence against Carolyn.  As stated above, the Sexual Molestation exclusion reads, "'Bodily Injury' or 'Property Damage' arising out of sexual molestation * * *."  Policy, Section II. E. 7.  According to the plain language of this provision, the policy excludes coverage for all bodily injury arising out of acts of sexual molestation, irrespective of the mental state of the defendant.

**{¶16}** The Supreme Court of Ohio has adopted a narrow interpretation of the term "arising out of" to mean "caus[ing] or contribut[ing] to the bodily injury for which coverage is sought."  *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 16-17, citing *Am. States. Ins. Co. v. Guillermin*, 108 Ohio App.3d 547, 565, (2d Dist. 1996).  "Arising out of" connotes the need for a direct consequence or a responsible condition.  *Id.* at ¶ 20, citing *Eyler v. Nationwide Mut. Ins. Co.*, 824 S.W.2d 855 (Ky. 1992); *see Starkey v. Builders FirstSource Ohio Valley, LLC*, 130 Ohio St.3d 114, 2011-Ohio-3278, ¶ 17 (referring to "arising out of" as any causal connection, whether direct or aggravated); *Taylor v. Ernst & Young, LLP*, 130 Ohio St.3d 411, 2011-Ohio-5262 , ¶ 70, citing *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, ¶ 18 ("'arising out of or relating to' encompasses any dispute arising out of

the business relationship"). Although the foregoing cases are factually distinguishable, the reasoning and interpretation are instructive to the application of the term 'arising out of' in the instant case. Accordingly, based on the plain language of the contract, because it is alleged that Carolyn's negligence caused or contributed to and was a responsible condition for Chloe's bodily injury, Carolyn is precluded from coverage under the Sexual Molestation provision.

{¶17} The amended complaint alleges that Carolyn's actions at the very least contributed to Plaintiffs' bodily injuries, and thus is further support that coverage for her alleged negligence is excluded by the Sexual Molestation provision. In every cause of action, the Plaintiffs allege damages as a result of "Defendants' conduct," even going so far as to allege that Defendants constitute an "enterprise" in the ninth cause of action. Docket No. 30. The Plaintiffs further allege that Carolyn's negligence in supervising the children "facilitat[ed Joshua's] rape, sexual battery, sexual assault, and sexual molestation of Plaintiff Chloe Crow * * *." Docket No. 30, ¶ 16. In fact, the amended complaint fails to allege any bodily injury due solely to Carolyn's negligence, but rather, predicates the damages on the conduct of Carolyn in conjunction with Joshua's conduct. Because of the wording in the amended complaint regarding the cause of Plaintiffs' injuries, we are further convinced that Carolyn's negligence caused or contributed to, or was a responsible condition for Plaintiffs' alleged damages that

-11-

arose out of the sexual molestation. Accordingly, UOIC does not owe Carolyn a defense or indemnification for the causes of action arising out of her negligence pursuant to the Sexual Molestation exclusion.

{¶18} We note that upon initial review, this approach appears to contravene the analysis set forth by the Ohio Supreme Court in *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718 (2009), a case hotly contested on appeal. In *White*, Benjamin White ("Benjamin"), the 17 year-old son of Lance and Diane White ("the Whites") stabbed Casey Hilmer ("Casey"). Benjamin, who lived with the Whites at the time, pleaded guilty to attempted murder and felonious assault. Casey's parents sued Benjamin and the Whites, asserting claims of negligent supervision and negligent entrustment against the Whites. The Whites' insurer, Safeco Insurance Company ("Safeco"), refused to defend or indemnify the Whites and filed a motion for declaratory judgment. The trial court held that Safeco was obliged to defend and indemnify the Whites in the negligence action against them. On appeal, the Ohio Supreme Court's decision was two-fold: first, it held that when an insurance policy's coverage for an "occurrence" is defined as an "accident," allegations of negligence on behalf of an insured, which is predicated on the commission of an intentional tort by another person, will be considered an "occurrence" and therefore covered by the policy. *White* at syllabus. The second holding in *White* instructed that exclusionary provisions

which preclude coverage for injuries that were either expected or intended by the insured or that arose out of an insured's intentional or illegal act do not preclude coverage for the associated negligence claims, for example negligent entrustment or supervision. *Id.* Additionally, the court instructed that, when determining whether policy exclusions preclude coverage for a negligent act coupled with an intentional or illegal act, reviewing courts are to "examine the injuries arising from the negligent act on their own accord, not as part of the intentional act." *Id.* at ¶ 33.

{¶19} As indicated above, our decision today is not at odds with *White.* Rather, we find the analysis in *White* inapplicable to the present case as the policy provisions at issue are fundamentally different. In *White*, the insureds purchased a homeowner's policy as well as an umbrella policy from Safeco. The exclusion contained in the homeowner's policy expressly precluded coverage for bodily injury or property damage which "is expected or intended by an insured or which is the foreseeable result of an act or omission intended by the insured." *Id.* at ¶ 15. The umbrella policy excluded coverage for "any injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any insured," as well as for "any act or damage which is expected or intended by any insured." *Id.* at ¶ 16.

{¶20} Both of the exclusions in *White* included specific language regarding the expected or intended act, consent, knowledge, foreseeable result, etc. Such insurance provisions, on their face, do not preclude coverage for injuries predicated upon an allegation of negligence. In the instant case, any language regarding the necessary knowledge or intent of the insured is remarkably absent from the Sexual Molestation exclusion. Therefore, the Sexual Molestation exclusion precludes coverage for any bodily injury arising out of sexual molestation *without regard to* the specific causal connection to the molester or the requisite mental state of the alleged tortfeasor. Because of the difference in the language of the operative exclusions in *White* and the present case, the holding in *White* is inapplicable to the instant case.[4]

{¶21} Rather, our decision that the language of the Sexual Molestation provision excludes coverage for Carolyn's negligence allegations is supported by *Westfield Ins. Co. v. Porchervina* and *United Ohio Ins. Co. v. Myers*. In *Myers*, the plaintiffs brought a civil action against Sandra Myers for negligent supervision

---

[4] The Ohio Supreme Court in *White* used the specific exclusionary provisions as a platform to emphasize the public policy that encourages insurance coverage for negligence claims stemming from illegal acts in order to ensure that victims of criminal acts or intentional torts receive fair and accurate compensation. However, because the policy exclusions at issue in *White* and the case sub judice are fundamentally inapposite, the analysis in *White* is not binding on this case. While we acknowledge the value in the public policy set forth in *White*, we nonetheless cannot "alter a lawful contract by imputing an intent contrary to that expressed by the parties." *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 12, citing *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635 (1992), *Blosser v. Enderlin*, 113 Ohio St. 121 (1925), paragraph one of the syllabus ("there can be no intendment or implication inconsistent with the express terms [of a written contract]"). Where the terms of the contract are clear, given their plain and ordinary meaning, we cannot look to public policy implications to alter the terms agreed to by the parties and impose coverage.

of her grandson and ward, Jeremy. Jeremy was previously found delinquent of gross sexual imposition for molesting the plaintiffs' minor children. The trial court granted summary judgment on behalf of defendant's insurer, holding that it did not owe a duty of indemnification to Myers for her negligent acts and omissions. On appeal, this court affirmed the trial court in light of the operative exclusion, which read:

> SECTION II- EXCLUSIONS * * *
> Medical payments to Others do not apply to bodily injury or property damage:
> b.    arising out of the actual or threatened physical or mental abuse, corporal punishment, or sexual molestation by anyone of any person while in the care, custody or control of an insured, or by the negligent employment, supervision, or reporting to the proper authorities, or failure to so report, of any person for who the insured is or ever was legally responsible[.] *United Ohio Ins. Co. v. Myers*, 3d Dist. No. 11-02-08, 2002-Ohio-6596, ¶ 25-27.

{¶22} The *Porchervina* case arises out of a lawsuit filed against Richard and Jacklyn Porchervina ("the Porchervinas") by James and Kristy Simon ("the Simons"), alleging sexual assault and intentional infliction of emotion distress against Dale Porchervina ("Dale"), and breach of parental responsibility and negligent infliction of emotional distress against the Porchervinas for the sexual assault inflicted by Dale upon their child, Nicholas. Westfield filed a complaint for declaratory judgment arguing that it had no duty to defend or indemnify the Porchervinas in their lawsuit with the Simons. The trial court granted Westfield's motion for summary judgment. On appeal, the Eleventh District found, in

Case No. 1-11-59

pertinent part, that the Porchervina's insurance policy with Westfield excluded coverage for the allegations against them. The relevant exclusionary provision provided that:

> 3. Coverage E – Personal Liability and Coverage F- Medical Payments to Others do not apply to bodily injury or property damage: * * * k. [a]rising out of sexual molestation, corporal punishment or physical or mental abuse." *Westfield Ins. Co. v. Porchervina*, 11th Dist. No. 2008-L-025, 2008-Ohio-6558, ¶ 29-31.

**{¶23}** Specifically, the court noted that the language of the exclusion was unambiguous and did not differentiate regarding who committed the act of sexual molestation. It explained that because "all of the Simons' alleged injuries, including those attributed to the negligence of [the Porchervinas] arose out of Dale Porchervina's alleged sexual molestation of Nicholas Simon," Westfield has no duty to defend or indemnify the Porchervinas. *Id.* at ¶ 32.

**{¶24}** *Porchervina* and *Myers* are germane to the instant case as the factual background as well as the exclusionary provisions at issue are practically identical to the facts and to the Sexual Molestation exclusion in the present case. Accordingly, we find the analysis to be more applicable to the instant case than *White*.

**{¶25}** Further, while the Ohio Supreme Court has announced that public policy favors insurance coverage for negligence relating to sexual molestation[5] and has set forth the analytical framework to address coverage for negligence of a

---

[5] This public policy was announced in *Doe v. Shaffer*, 90 Ohio St.3d 388 (2000).

-16-

non-molester, this precedent falls far short of addressing whether the Sexual Molestation policy exclusion applies in the instant case. The Supreme Court has not mandated that every insurance policy necessarily provide such coverage, and the parties retain their freedom to contract for the same. *See Porchervina* at ¶ 13-14. We will not alter the contractual language agreed to by the parties by imparting an ambiguity which otherwise would not exist in furtherance of public policy.

{¶26} Accordingly, Appellant's sole assignment of error is sustained.

*Judgment Reversed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**