Moyer, C.J.
I
{¶ 1} Safeco Insurance Company of America (“Safeco”) appeals from a decision declaring that Safeco is obliged to defend and indemnify its insureds, Lance and Diane White (“the Whites”), in connection with a negligence action filed against them after their 17-year-old son, Benjamin, attacked another child.
{¶ 2} The First District Court of Appeals certified this case pursuant to Section 3(B)(4), Article IV of the Ohio Constitution and App.R. 25, concluding that its judgment conflicts with judgments from other courts of appeals on two questions of law.
{¶ 3} First, the court of appeals certified a conflict with the Fifth District Court of Appeals decision in Torres v. Gentry, Ashland App. No. 06 COA 038, 2007-Ohio-4781, 2007 WL 2702457, on the following issue: “When an insurance policy defines an ‘occurrence’ as an ‘accident’ that results in bodily injury, does an ‘occurrence’ include injuries that result from an intentional act when the in *564 sured[s] seeking coverage are claimed to have been negligent in relation to that intentional act?” Second, the court certified a conflict with the Third District Court of Appeals decision in United Ohio Ins. Co. v. Metzger (Feb. 8, 1999), Putnam App. No. 12-98-1, 1999 WL 84201, on the following issue: “When an insurance policy excludes an injury ‘which is expected or intended by [an or any] insured * * * injuries ‘arising out of an illegal act committed by or at the direction of an insured’; or ‘any injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any insured,’ do the exclusions become ambiguous when read in conjunction with a ‘Severability of Insurance’ condition, in light of the announced expectation by policyholders that their negligence will be covered?” We accepted Safeco’s discretionary appeal on the same issues and consolidated the cases. 117 Ohio St.3d 1457, 2008-Ohio-1635, 884 N.E.2d 67.
{¶ 4} For the following reasons, we answer the first certified question in the affirmative, holding that the negligent acts of the Wfiiites are “occurrences” under the language of the Safeco policies at issue. However, we decline to address the second question, which pertains to potential ambiguities in the policy exclusions, because we find the exclusions to be inapplicable in these circumstances. Accordingly, we affirm the judgment of the court of appeals and hold that the Wfliites are entitled to coverage under the Safeco policies.
II
{¶ 5} In July 2003, 17-year-old Benjamin White attacked and repeatedly stabbed Casey Hilmer, the 13-year-old daughter of Steve and Megen Hilmer, as she was jogging in their neighborhood. Her injuries were not fatal. Benjamin, who lived with his parents, the Whites, at the time of the attack, pleaded guilty to attempted murder and felonious assault. The trial court convicted him and sentenced him to an aggregate term of ten years in prison.
{¶ 6} After Benjamin was convicted, the Hilmers sued Benjamin and the Whites on multiple claims, including battery against Benjamin and negligent supervision, negligent entrustment, and negligent infliction of emotional distress against the Wfliites. The matter proceeded to a jury trial.
{¶ 7} The jury made several findings relevant to our review. First, the jury found that Benjamin had committed a battery, an intentional tort, against Casey Hilmer and that his intentional acts had also caused Steve Hilmer to suffer emotional distress. Second, the jury found that the Wfliites had been negligent in their supervision of Benjamin, and that this negligence had also injured Casey Hilmer and caused Steve Hilmer to suffer emotional distress. Third, the jury found that the Hilmers were owed $6,500,000 in compensatory damages for these combined torts. Fourth, the jury found that Benjamin was 30 percent responsible for the Hilmers’ injuries and that the WTiites were 70 percent responsible. *565 The jury also awarded the Hilmers $3,500,000 in punitive damages against Benjamin.
{¶ 8} At the time of the attack, the Whites had four insurance policies: a homeowner’s policy and a separate umbrella policy, both issued by Safeco, a second homeowner’s policy issued by appellee Pacific Indemnity Company (“Pacific”), and an umbrella policy issued by appellee Federal Insurance Company (“Federal”). When the Hilmers filed suit, the Whites sought a defense and indemnification from each carrier. Pacific and Federal agreed to defend them, but Safeco refused. All, however, expressly denied any obligation to indemnify the Whites.
{¶ 9} During the pendency of the suit, Safeco filed the instant action, seeking a declaratory judgment that it has no obligation to defend or indemnify the Whites in relation to claims arising out of their son’s intentional act. The trial court consolidated Safeco’s declaratory-judgment action with the Hilmers’ action, and the insurance companies and the Whites filed motions for summary judgment on the issue of coverage under the policies. Following the jury’s verdict, however, Pacific and Federal withdrew their motions for summary judgment, agreed to indemnify the Whites under the terms of their policies, and claimed that Safeco should share in the cost. Safeco continued to aver that the Whites were not entitled to coverage under its policies.
{¶ 10} The trial court granted summary judgment in favor of the Whites, entering a declaratory judgment that Safeco was required to defend and indemnify the Whites in connection with the underlying action. Federal and Pacific subsequently settled with the Hilmers on behalf of the Whites and asked the court to order Safeco to reimburse Federal and Pacific for Safeco’s share of the Whites’ attorney fees and the settlement.
{¶ 11} On appeal, the First District Court of Appeals affirmed the trial court, holding that the Whites’ negligence constituted an “occurrence” pursuant to language in the Safeco policies, even though it related “to the failure to prevent intentional conduct.” Safeco Ins. Co. of Am. v. Federal Ins. Co., Hamilton App. No. C-070074, 2007-Ohio-7068, 2007 WL 4553690, ¶ 19. The appellate court further held that a severability clause in the Safeco policies created an ambiguity with respect to the application of an exclusion for injuries caused by the intentional act of another insured and that this ambiguity must be read in favor of coverage for the Whites. Id. at ¶ 26.
Ill
{¶ 12} Safeco contends that its policies do not provide coverage for the Whites’ negligence for two reasons: (1) the injury in this case resulted from an intentional act by Benjamin, an insured under the policies, and therefore the act was not *566 an “occurrence,” which both policies defíne as an “accident,” and (2) the policies explicitly exclude coverage for the intentional acts of an insured, and the severability clause in both policies does not render the language in the exclusionary clauses ambiguous.
{¶ 13} Federal and Pacific argue that Safeco’s policies provide coverage because the Whites’ acts were accidental and thus constitute an “occurrence” under the policies. Moreover, they contend that the exclusionary language in the Safeco policies is ambiguous because of a severability clause that provides that the insurance applies separately to each insured.
{¶ 14} Before we address these arguments, we review the relevant provisions in the Safeco policies and our caselaw on the general principles applicable when interpreting insurance policies.

A. The Safeco insurance policies

{¶ 15} The homeowner’s policy issued by Safeco expressly names Lance and Diane Wdiite as insureds, and the definition of “insured” contained in the policy includes their son, Benjamin. This policy provides coverage when “a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies.” According to the policy, “ ‘[occurrence’ means an accident” (emphasis added) that results in bodily injury or property damage. The policy expressly excludes coverage for bodily injury or property damage that “is expected or intended by an insured or which is the foreseeable result of an act or omission intended by an insured.” Moreover, the contract excludes coverage for injuries “arising out of any illegal act committed by or at the direction of an insured.”
{¶ 16} The umbrella policy issued by Safeco expressly names Lance White as the insured, and the definition of “insured” includes both Diane and Benjamin. The contract provides coverage for “personal injury or property damage caused by an occurrence,” and “occurrence” is defined as “an accident” that results in personal injury or property damage. The umbrella policy excludes coverage for “[a]ny injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any insured,” as well as for “[a]ny act or damage which is expected or intended by any insured.” In addition, both policies contain a severability clause that states, “This insurance applies separately to each insured.”
{¶ 17} As we stated in Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, our task when interpreting an insurance policy is to “examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy.” Id. at ¶ 11, citing Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, *567 paragraph one of the syllabus. Moreover, “[w]e look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy.” Id., citing Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.
{¶ 18} We further stated in Galatis that “where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party.” Id. at ¶ 13, citing Cent. Realty Co. v. Clutter (1980), 62 Ohio St.2d 411, 16 O.O.3d 441, 406 N.E.2d 515. Because the insurer, not the insured, typically drafts the language in an insurance policy, “an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured.” Id., citing King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.
{¶ 19} With this policy language and caselaw in mind, we consider the issues presented for our review.

B. Negligence related to an intentional act as an “occurrence”

{¶ 20} The first issue presented is whether Casey Hilmer’s injury resulted from an “occurrence” for purposes of Lance and Diane White’s claim for coverage under the Safeco policies.
{¶ 21} Both policies define an “occurrence” as an “accident” that results in injury or property damage. In Hybud Equip. Corp. v. Sphere Drake Ins. Co. (1992), 64 Ohio St.3d 657, 666, 597 N.E.2d 1096, we stated that “[i]n its common, ordinary use, the word ‘accidental’ means unexpected, as well as unintended.” (Emphasis added.) We similarly recognized in Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 38, 665 N.E.2d 1115, that “inherent in a policy’s definition of ‘occurrence’ is the concept of an incident of an accidental, as opposed to an intentional, nature.” (Emphasis altered.) Furthermore, in Rothman v. Metro. Cas. Ins. Co. (1938), 134 Ohio St. 241, 247, 12 O.O. 50, 16 N.E.2d 417, this court acknowledged that “ ‘accident,’ as the term is ordinarily used, is a more comprehensive term than ‘negligence,’ and in its common signification means an unexpected happening without intention or design.” Id. at 247, 12 O.O. 50, 16 N.E.2d 417, citing Commonwealth Cas. Co. v. Headers (1928), 118 Ohio St. 429, 161 N.E. 278. Thus, we held in Rothman that absent contrary language in a policy, “if the injury was not intentionally caused, then it was accidentally suffered.” Id. at 246, 12 O.O. 50, 16 N.E.2d 417.
{¶ 22} Here, Benjamin intentionally injured 13-year-old Casey Hilmer, but the jury found the Whites negligent with respect to Benjamin’s act. In other words, from Benjamin’s perspective, the act was intentional, but from the perspective of *568 his parents, it was accidental. Thus, for purposes of coverage, the question is whether the accidental or intentional nature of the act that caused Casey’s injury should be determined from the perspective of Benjamin or from the perspective of his parents.
{¶ 23} We addressed a similar issue in Doe v. Shaffer (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243. Doe, who had been sexually molested while living in a residence for the mentally retarded, sued the facility’s operator for negligent retention and supervision of the employees who committed the molestation. Id. at 389, 738 N.E.2d 1243. The operator of the facility sought coverage pursuant to its insurance policy, but the carrier denied the claim and filed a declaratory-judgment action claiming that it had no duty to provide coverage. Id. at 390, 738 N.E.2d 1243. The trial court entered summary judgment in favor of the carrier, and the court of appeals affirmed, holding that public policy bars coverage not only for the intentional act of sexual molestation but also for negligence with regard to the molestation. We reversed, however, and held that “Ohio public policy permits a party to obtain liability insurance coverage for negligence related to sexual molestation when that party has not committed the act of sexual molestation.” Id. at syllabus.
{¶24} Thus, we held that liability coverage hinges on whether the act is intentional from the perspective of the person seeking coverage. As we stated, “the intentions of the molester are immaterial to determining whether the allegedly negligent party has coverage.” Doe, 90 Ohio St.3d at 393, 738 N.E.2d 1243, citing Silverball Amusement, Inc. v. Utah Home Fire Ins. Co. (W.D.Ark. 1994), 842 F.Supp. 1151, 1160, affirmed (C.A.8,1994), 33 F.3d 1476, citing Sena v. Travelers Ins. Co. (D.N.M.1992), 801 F.Supp. 471, 475. Furthermore, we explained, “the critical issue is the nature of the intent — inferred or otherwise — of the party seeking coverage.” (Emphasis added.) Id. at 394, 738 N.E.2d 1243, citing Preferred Mut. Ins. Co. v. Thompson (1986), 23 Ohio St.3d 78, 81, 23 OBR 208, 491 N.E.2d 688, and Transamerica Ins. Group v. Meere (1984), 143 Ariz. 351, 356, 694 P.2d 181.
{¶ 25} We concluded that “the intentions or expectations of the negligent insured must control the coverage determination, and not the intentions or expectations of the molester.” Doe, 90 Ohio St.3d at 393, 738 N.E.2d 1243, citing Silverball, 842 F.Supp. at 1160. We reasoned that a contrary decision would “effectively dissolve} ] the distinction between intentional and negligent conduct, allowing the intentional act to devour the negligent act for the purpose of determining coverage.” Id., quoting Silverball, 842 F.Supp. at 1163.
{¶ 26} Although the issue in Doe was whether Ohio public policy permits insurance coverage for negligence arising out of a third party’s illegal act, our rationale applies to this case in that whether the act is intentional must be *569 determined from the perspective of the person seeking coverage. In addition, many other jurisdictions have held that an “occurrence” exists if the person seeking coverage was negligent with regard to the intentional act. See, e.g., United Fire & Cas. Co. v. Shelly Funeral Home, Inc. (Iowa 2002), 642 N.W.2d 648, 654; Capital Alliance Ins. v. Thorough-Clean, Inc. (Ala.1994), 639 So.2d 1349, 1352; Durham City Bd. of Edn. v. Nat. Union Fire Ins. Co. (1993), 109 N.C.App. 152, 162, 426 S.E.2d 451; Atlantic Employers Ins. Co. v. Tots & Toddlers Pre-School Day Care Ctr., Inc. (App.Div.1990), 239 N.J.Super. 276, 284-285, 571 A.2d 300; Am. States Ins. Co. v. Borbor (C.A.9, 1987), 826 F.2d 888, 895; see also 43 American Jurisprudence 2d (1982) 766, Insurance, Section 708; 2 Allan D. Windt, Insurance Claims and Disputes (5th Ed.2007) 65-68, Section 11:3.
{¶ 27} Accordingly, we hold that when a liability insurance policy defines an “occurrence” as an “accident,” a negligent act committed by an insured that is predicated on the commission of an intentional tort by another person, e.g., negligent hiring or negligent supervision, qualifies as an “occurrence.” In this case, neither Lance nor Diane intentionally injured Casey Hilmer. From their perspective, the injury was accidental, and thus the act that caused her injury constitutes an “occurrence” as defined in the policies they purchased from Safeco. Accordingly, we answer the first certified conflict question in the affirmative.

C. Policy exclusions

{¶ 28} The second issue presented is whether any of the policy exclusions preclude coverage. The parties and the court of appeals appear to agree that, unless found to be ambiguous, the intentional-act and illegal-act exclusions in the homeowner’s and umbrella policies preclude coverage for all the injuries in this case, whether caused by Benjamin’s intentional acts or the Whites’ negligent acts. Pacific and Federal argue that the use of the words “an insured” and “any insured” in the exclusions creates an ambiguity that must be read against Safeco when the provisions are read in conjunction with the severability clauses in the policies. See Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 13, citing Cent. Realty Co., 62 Ohio St.2d 411, 16 O.O.3d 441, 406 N.E.2d 515 (when a written contract is standardized between partiés of unequal bargaining power, an ambiguity will be construed in favor of the nondrafting party).
{¶ 29} However, before considering whether the exclusions are ambiguous, we must determine whether they are applicable at all to these circumstances, and we do not find the answer to this question to be a foregone conclusion in view of the different types of torts at issue in this case. In fact, the inquiry raises a separate question that ultimately controls: Do policy exclusions that preclude coverage for the intentional and/or illegal acts of an insured also preclude coverage for related negligent acts of other insureds? After reviewing our caselaw and the caselaw *570 from other states, which are split on this topic, we conclude that the exclusions do not preclude coverage for such negligent acts.
{¶ 30} As with the previous issue, Doe is instructive. There, we explored the distinction between injuries arising from intentional and/or illegal acts and those arising from acts like negligent supervision. As in this case, that case also featured allegations of both intentional torts (sexual molestation) and related negligent torts (negligent supervision, retention, and failure to warn) and a dispute over whether the negligent acts were covered by an insurance policy. Doe, 90 Ohio St.3d at 389-390, 738 N.E.2d 1243.
{¶ 31} We held that public policy permits a party to obtain liability insurance coverage for negligence related to intentional acts when the negligent party did not commit the intentional act. Id. at syllabus. In coming to that conclusion, we partially overruled a prior decision, Cuervo v. Cincinnati Ins. Co. (1996), 76 Ohio St.3d 41, 665 N.E.2d 1121, that held that insurance coverage for a negligent-supervision claim is barred by the public policy against permitting liability insurance for intentional torts because the negligence damages “flow from” the intentional tort committed, id. at 44, 665 N.E.2d 1121. Doe at 393, 738 N.E.2d 1243. We rejected the Cuervo approach as logically untenable “because the intentions of the [party who committed the intentional tort] are immaterial to determining whether the allegedly negligent party has coverage.” Doe, 90 Ohio St.3d at 393, 738 N.E.2d 1243, citing Silverball, 842 F.Supp. at 1160.
{¶ 32} As with the previous question, the portions of Silverball cited in Doe remain instructive: “ ‘The ultimate effect of [those opinions denying coverage] leads to a metamorphosis in which certain negligent actions are transformed by the court into intentional actions for the purposes of deciding negligent hiring cases involving sexual abuse. Such a decision effectively dissolves the distinction between intentional and negligent conduct, allowing the intentional act to devour the negligent act for the purpose of determining coverage. The correct method of analyzing this issue in cases with the factual setting and insurance policy provisions involved * * * would deal with each act on its own merits * * *.’ ” (Emphases added.) Id. at 393, 738 N.E.2d 1243, quoting Silverball, 842 F.Supp. at 1163. We elaborated on this reasoning in Doe, noting that an “interpretation that refuses to distinguish between the abuser’s intentional conduct and the insured’s alleged negligence would impermissibly ignore the plain language of an insurance policy that excludes from coverage bodily injury that was expected or intended from the standpoint of the insured.” Id. at 394, 738 N.E.2d 1243.
{¶ 33} These passages show that torts like negligent supervision, hiring, retention, and entrustment are separate and distinct from the related intentional torts (committed by other actors) that make the negligent torts actionable. Thus, in determining whether a policy exclusion precludes coverage for that negligent *571 act, we must examine the injuries arising from the negligent act on their own accord, not as part of the intentional act. We must also remember that a policy exclusion “will be interpreted as applying only to that which is dearly intended to be excluded.” (Emphasis sic.) Hybud Equip Corp., 64 Ohio St.3d at 665, 597 N.E.2d 1096.
{¶ 34} The two insurance policies at issue in this case each have two exclusions that could apply to these circumstances. The homeowner’s policy precludes coverage for injuries that are “expected or intended by an insured” or that “aris[e] out of any illegal act committed by or at the direction of an insured”; the umbrella policy precludes coverage for injuries “caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any insured” and for “[a]ny act or damage which is expected or intended by any insured.” Although each exclusion is worded slightly differently, the clear import is that the policies preclude coverage for injuries arising from or caused by the intentional or illegal acts of an insured.
{¶ 35} These exclusions plainly apply to Benjamin’s acts: he intentionally stabbed Casey, and the injuries he inflicted upon her and her family arose from the illegal acts he committed. Safeco would end the analysis there, so that Benjamin’s involvement precludes coverage for all related claims because Benjamin was insured under the same policy as the Whites.
{¶ 36} This view fails to acknowledge the separate nature of the negligent-supervision and negligent-entrustment torts. To succeed on any claim of negligence, the plaintiff must show that the defendant breached an applicable duty of care and that the breach proximately caused the plaintiffs injuries. See Lang v. Holly Hill Motel, Inc., 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10. Thus, to succeed on both claims, the Hilmers were required to show that the Whites breached their duties to supervise Benjamin and not to entrust him with a dangerous instrument and that these breaches proximately caused the Hilmers to suffer injuries. See also Nearor v. Davis (1997), 118 Ohio App.3d 806, 813, 694 N.E.2d 120 (further defining the elements of negligent supervision and negligent entrustment).
{¶ 37} This last element is crucial. For the Whites to be liable to the Hilmers, the Hilmers were required to show that they were injured by the Whites’ breaches of duty. While Benjamin’s intentional torts relate to the proximate-causation element (i.e., the Whites’ failure to act with ordinary care enabled Benjamin to injure Casey), the injuries arising from the two types of torts are distinct. To prevail, the Hilmers had to demonstrate a separate injury from the Whites’ negligent failure to monitor Benjamin, one that did not arise from intentional or illegal actions as contemplated by the policy exclusions.
*572 {¶ 38} As the jury interrogatories reveal, separate injuries were alleged and proved in this case. The jury determined that the Hilmers were injured by both Benjamin’s intentional battery and intentional infliction of emotional distress and the Whites’ negligent supervision and negligent infliction of emotional distress. These separate causes of action produced distinct injuries, for which Benjamin and the Whites were separately liable; the jury found that Benjamin was responsible for 30 percent of the Hilmers’ compensatory damages for his intentional actions, whereas the Whites were responsible for 70 percent of the Hilmers’ damages for their negligence. Thus, the Whites were held separately liable for their own actions, which were neither intentional nor illegal; the injuries they caused were distinct from the injuries caused by Benjamin’s intentional and illegal acts. Therefore, the intentional-act and illegal-act policy exclusions do not apply to the negligence claims against the Whites.
{¶ 39} We acknowledge that a split has arisen in the federal and state courts that have examined this precise issue. Several courts have followed the above approach, examining each tort on its own merits and declining to apply intentional-act and illegal-act exclusions (or similar exclusions) to preclude coverage for negligent acts related to intentional torts. See, e.g., C.P. v. Allstate Ins. Co. (Alaska 2000), 996 P.2d 1216, 1225-1226 (“From the perspective of insureds whose acts are alleged to have negligently, but not criminally or intentionally, been a cause of a claimant’s injury, these exclusions do not apply to the negligence claims against them” [at 1226]); Silverball, 842 F.Supp. at 1159-1165 (“an insurer must provide coverage and a legal defense to an insured where a complaint alleges that an employer was negligent in hiring and supervision of an employee who subsequently committed an intentional tort. An insurance policy would require an exceedingly precise exclusionary clause to avoid that fundamental principle, and there is no such clause in the instant case” [at 1159]); Talley v. MFA Mut. Ins. Co. (1981), 273 Ark. 269, 274-275, 620 S.W.2d 260; U.S. Fidelity & Guar. Co. v. Open Sesame Child Care Ctr. (N.D.Ill.1993), 819 F.Supp. 756, 760 (“In refusing to separate the employer’s alleged negligence from the employee’s intentional conduct, [other] courts impermissibly ignored the employer’s independent acts which gave rise to the alleged tort”); Frankenmuth Mut. Ins. Co. v. Williams (Ind.1997), 690 N.E.2d 675, 678-680; St. Paul Fire & Marine Ins. Co. v. Schrum (C.A.8, 1998), 149 F.3d 878, 880-881 (applying Missouri law and noting that the intentional tort was “merely incidental” to the negligent-supervision claim, making the negligence a separate and nonexcluded cause of the victim’s injuries); Bd. of Public Edn. of the School Dist. of Pittsburgh v. Natl. Union Fire Ins. Co. (Pa.Super.1998), 709 A.2d 910, 916-917 (“Where it is alleged that negligence allowed a crime to occur, does the claim against the negligent arise from the negligence or from the criminality? We believe it is the former” [at 917]).
*573 {¶ 40} Other courts have taken the opposite approach, finding that the injuries from negligent conduct related to an intentional tort are inextricably related to the injuries arising from the intentional tort, and therefore coverage is precluded for both under the intentional-act and illegal-act exclusions. See, e.g., Farmer v. Allstate Ins. Co. (C.D.Cal.2004), 311 F.Supp.2d 884, 893-897; W. Am. Ins. Co. v. Embry (Apr. 25, 2005), W.D.Ky. No. Civ. A. 3:04CV-47-H, 2005 WL 1026185 (applying Kentucky law and finding that the exclusions evidenced “a clear and specific intent to exclude all claims arising from sexual molestation, even those based on some theory other than the insured’s intentional conduct — a theory such as negligence”); Illinois Farmers Ins. Co. v. M.S. (Mar. 31, 2005), D.Minn. No. Civ. 04-3102RHKJSM, 2005 WL 741898 (“when an insurance policy excludes coverage for an injury ‘arising out of or ‘resulting from’ certain specified conduct * * * and such conduct occurs, coverage is also excluded for the insured’s negligent supervision if the injury would not have occurred but for the specified conduct” [emphasis sic]); Northwest G.F. Mut. Ins. Co. v. Norgard (N.D.1994), 518 N.W.2d 179, 184; J.G. v. Wangard (Wis.2008), 313 Wis.2d 329, 753 N.W.2d 475, ¶ 59-60.
{¶ 41} The decisions of the courts that are in conflict with our decision here appear to follow the Cuervo approach — that damages from negligent acts “flow from” related intentional acts — but we soundly rejected that reasoning in Doe. Doe, 90 Ohio St.3d at 393, 738 N.E.2d 1243. Our decision to join the courts that have found the intentional-act and illegal-act exclusions inapplicable to acts of negligence related to intentional torts is a continuation of and consistent with the “examine each act on its own merits” approach established in Doe and our response to the first certified question. As we noted in Doe, this approach comports with common sense: “While it is indeed true that the average person would likely find liability coverage for [intentional torts] loathsome, the same rationale cannot extend to negligence. The average person would no doubt find such coverage to be the purpose for which he obtained insurance.” Doe, 90 Ohio St.3d at 395, 738 N.E.2d 1243.
{¶ 42} Accordingly, we hold that insurance-policy exclusions that preclude coverage for injuries expected or intended by an insured, or injuries arising out of or caused by an insured’s intentional or illegal acts, do not preclude coverage for the negligent actions of other insureds under the same policy that are predicated on the commission of those intentional or illegal acts, e.g., negligent hiring or negligent supervision.
{¶ 43} Because we find these exclusions to be inapplicable, the second certified question, which pertains to whether the exclusions are ambiguous, is moot. We therefore decline to address it.
*574 IV
{¶ 44} Because the Whites’ actions qualify as “occurrences” under the applicable policies and because no exclusions apply, the Whites are entitled to coverage under Safeco’s policies. We therefore affirm the decision of the court of appeals, albeit for different reasons.
Judgment affirmed.
Pfeifer, O’Connor, and Lanzinger, JJ., concur.
Cupp, J., concurs separately.
Lundberg Stratton and O’Donnell, JJ., concur in part and dissent in part.