Pfeifer, J.,
dissenting.
{¶ 22} I dissent, first, because I believe this court should not be answering this question at this time. The question the majority leaves unanswered is the only question truly at issue in this case. Second, I dissent from the majority’s response to the first certified question of law.
*485 The Wrong Question
{¶ 23} The district court determined that it did not have to answer the question of whether claims of defective construction/workmanship are claims created by an “occurrence” under a commercial general liability (“CGL”) policy. Instead, it answered the question it deemed dispositive — whether the policy’s contractual liability exclusion precluded coverage for claims for defective construction/workmanship in this case. Even at the trial level, Westfield Insurance Company sought certification to this court for a determination of the two issues it raises here, but the district court denied the motion. I agree with the dissenting judge of the court of appeals — Westfield’s revival of the motion to certify at the appellate level was an end run to evade abuse-of-discretion review of the district court’s denial of the motion for certification. As Judge McKeague wrote below, “the proper course would have been for Westfield to appeal the district court’s denial of the motion to certify.”
{¶ 24} Custom Agri Systems appealed the district court’s determinative ruling on the policy exclusion, but Westfield again sought certification to this court — this time from the court of appeals — on the broader issue of whether defective workmanship constitutes an “occurrence” under a CGL policy. The district court had concluded that it was unnecessary to even meet that question, and as Judge McKeague noted, “there is absolutely no reason to certify the first question at this stage of the litigation.” If the appellate court first overruled the district court on the contractual exclusion issue, it might then become appropriate for the panel, or the district court on remand, to certify the question to this court. Until then, Judge McKeague wrote, the circuit court “should not be in the business of certifying questions that need not be resolved.”
{¶ 25} The first certified question is a big question, and an open question, which Westfield really wants answered. But its desire to resolve an issue that must arise with its policyholders fairly often does not create in this court an obligation to answer it in this case. This is not “Dear Abby.”
The Wrong Answer
{¶ 26} I also dissent from the majority’s response to the first certified question, “Are claims of defective construction/workmanship brought by a property owner claims for ‘property damage’ created by an ‘occurrence’ under a commercial general liability policy?” The majority answers in the negative. I would answer that if the defective construction is accidental, it constitutes an “occurrence” under a CGL policy. “[A] strong recent trend in the case law interprets the term ‘occurrence’ to encompass unanticipated damage to nondefective property resulting from poor workmanship.” Greystone Constr., Inc. v. Natl. Fire & Marine Ins. Co., 661 F.3d 1272, 1282 (10th Cir.2011). That is not to say that an exclusion in the policy might not relieve the insurer of the duty to provide coverage.
*486 {¶ 27} The majority holding is too broad for the facts of this case. Determining that defective workmanship cannot result in a covered occurrence under a CGL policy forecloses too many other potential cases. The question posed by the federal court concerns the initial grant of coverage; it does not relate to any possible exclusions. In Zanco, Inc. v. Michigan Mut. Ins. Co., 11 Ohio St.3d 114, 464 N.E.2d 513 (1984), this court faced a similar CGL policy and a similar set of facts. In Zanco, condominium owners alleged that the contractor, Zanco, breached its duty to construct the condominiums in a workmanlike manner, thereby causing defects in the structure. Zanco did not deny the defects, but rather claimed that the fault lay with its suppliers, who allegedly furnished Zanco with defective materials. Zanco sought coverage under its CGL insurance contract. The court looked to the entire contract to determine the issue. The court did not expressly rule on the issue of whether the damage to the condominiums was “property damage” caused by an “occurrence,” but did indicate support for the idea that at that threshold level, there was coverage but that the policy exclusions were ultimately determinative:
Zanco maintains, and the court of appeals agreed, that the counterclaim alleged “property damage” caused by an “occurrence” as those terms are defined in the policies. Athough a perfectly credible argument can be made that the allegations in the Pinecrest counterclaim were within these initial provisions for coverage, the insurance contracts must be examined in their entirety to determine if there are any applicable exceptions to their coverage. A careful review of the exclusions contained in the policies reveals that Michigan Mutual owed no duty to defend under these facts.
(Footnote omitted.) Id. at 115-116.
{¶ 28} Again, the question we are answering does not consider exclusions — it deals with the initial grant of coverage. Under the policy at issue, the insurance covers “ ‘property damage’ * * * caused by an ‘occurrence’ that takes place in the ‘coverage territory.’ ” The policy defines an “occurrence” as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” The key question is whether defective workmanship can be considered accidental. Given this court’s definition of “accidental,” I would hold that the initial grant of coverage would apply in certain instances of defective workmanship, those in which the damage was not intentional.
{¶ 29} This court’s definition of “accidental” is broad, covering unexpected, unintentional happenings:
*487 In Hybud Equip. Corp. v. Sphere Drake Ins. Co. (1992), 64 Ohio St.3d 657, 666, 597 N.E.2d 1096, we stated that “[i]n its common, ordinary use, the word ‘accidental’ means unexpected, as well as unintended.” (Emphasis added.) We similarly recognized in Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 38, 665 N.E.2d 1115, that “inherent in a policy’s definition of ‘occurrence’ is the concept of an incident of an accidental, as opposed to an intentional, nature.” (Emphasis altered.) Furthermore, in Rothman v. Metro. Cas. Ins. Co. (1938), 134 Ohio St. 241, 247, 12 O.O. 50, 16 N.E.2d 417, this court acknowledged that “ ‘accident,’ as the term is ordinarily used, is a more comprehensive term than ‘negligence,’ and in its common signification means an unexpected happening without intention or design.” Id. at 247, 16 N.E.2d 417, 12 O.O. 50, citing Commonwealth Cas. Co. v. Headers (1928), 118 Ohio St. 429, 161 N.E. 278. Thus, we held in Rothman that absent contrary language in a policy, “if the injury was not intentionally caused, then it was accidentally suffered.” Id. at 246, 16 N.E.2d 417,12 O.O. 50.
Safeco Ins. Co. of Am. v. White, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 21.
{¶ 30} Our first-level analysis should thus focus upon whether the defective workmanship was intentionally caused. In Sheehan Constr. Co., Inc. v. Continental Cas. Co., 935 N.E.2d 160, 170 (Ind.2010), modified on rehearing, 938 N.E.2d 685 (Ind.2010), the Supreme Court of Indiana established that intent is the key to determining whether a construction defect is accidental:
Implicit in the meaning of “accident” is the lack of intentionality. * * * The question presented is whether faulty workmanship is an accident within the meaning of a standard CGL policy. In our view the answer depends on the facts of the case. For example, faulty workmanship that is intentional from the viewpoint of the insured cannot be an “accident” or an “occurrence.” See Lamar Homes [Inc. v. Mid-Continent Cas. Co.,] 242 S.W.3d [1] at 8-9 [(Tex.2007)]. On the other hand if the faulty workmanship is “unexpected” and “without intention or design” and thus not foreseeable from the viewpoint of the insured, then it is an accident within the meaning of a CGL policy.
{¶ 31} A deliberate act — such as performing construction work — can have accidental consequences. “[A] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would *488 have been different had the deliberate act been performed correctly.” Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 8 (Tex.2007).
{¶ 32} The majority relies on an Arkansas case and some Ohio appellate cases that seem to say that defective workmanship that results in damage only to the work product itself cannot constitute an occurrence. But the character of the damage is immaterial in regard to the threshold question of whether faulty construction is an occurrence: “The CGL policy * * * does not define an ‘occurrence’ in terms of the ownership or character of the property damaged by the act or event. Rather, the policy asks whether the injury was intended or fortuitous, that is, whether the injury was an accident.” Id. Cases that focus on the type of damage resulting from faulty construction do not truly address the issue of whether there has been an “occurrence”:
The reasoning found in these cases simultaneously fails to evaluate the policy as a whole and collapses what should be a separate and specific analysis of the policy exclusions into the coverage grant analysis of the term “occurrence.” By focusing on the kind of property damage alleged to determine whether there has been an “occurrence,” these decisions improperly apply the policy exclusions to determine whether there has been an “occurrence.”
(Emphasis sic; footnote omitted.) Clifford J. Shapiro, Point/Counterpoint: Inadvertent Construction Defects Are an “Occurrence” under CGL Policies, 22 Construction Lawyer 13, 17 (Spring 2002).
{¶ 33} The better-reasoned Ohio appellate cases recognize that a CGL policy is not the equivalent of a performance bond but also recognize that
the rationale for [that] proposition is not that the allegations of negligent construction or design practices do not fall within the broad coverage for property damage caused by an occurrence, but that * * * the damages resulting from such practices are usually excluded from coverage by the standard exclusions found in such policies.
Erie Ins. Exchange v. Colony Dev. Corp., 136 Ohio App.3d 406, 414, 736 N.E.2d 941 (1999). In Erie Ins. Exchange v. Colony Dev. Corp., 136 Ohio App.3d 419, 422, 736 N.E.2d 950 (2000), fn. 1, the court pointed out the illogic of basing a determination of whether a defect is an occurrence on what property was damaged:
*489 The logical basis for the distinction between damage to the work itself (not caused by an occurrence) and damage to collateral property (caused by an occurrence) is less than clear. Both types of property damage are caused by the same thing — negligent or defective work. One type of damage is no more accidental than the other. * * * [T]he basis for the distinction is not found in the definition of occurrence but by application of the standard “work performed” and “work product” exclusions found in a [cjommercial general liability insurance policy.
{¶ 34} As pointed out by the court in Lee Builders, Inc. v. Farm Bur. Mut. Ins. Co., 281 Kan. 844, 856, 137 P.3d 486 (2006), exclusions for work product and work performed exist because the initial broad grant of coverage for occurrences includes damage caused by accidental defective workmanship:
“A court need only ask why the CGL policy includes an exclusion for property damage to the insured’s own work and that of its subcontractors to understand that it would be nonsensical for the policy to include such a provision if this kind of property damage could never be caused by an ‘occurrence’ in the first place. A court need only ask why the CGL policy specifically includes an express exception to the ‘your work’ exclusion for property damage arising out of the work of a subcontractor to understand that this kind of property damage must be included in the broad scope of the term ‘occurrence’ in the coverage grant, and that the coverage determination for this kind of property damage must be made based on the construction-specific policy exclusions.” (Emphasis added.)
Id., quoting Clifford J. Shapiro, The Good, the Bad, and the Ugly: New State Supreme Court Decisions Address Whether an Inadvertent Construction Defect Is an “Occurrence” under CGL Policies, 25 Constr. Law. 9, 12 (Summer 2005).
{¶ 35} If coverage were inappropriate in this case, it would be by operation of the policy’s exclusions, “not because a loss actionable only in contract can never be the result of an ‘occurrence’ within the meaning of the CGL’s initial grant of coverage. This distinction is sometimes overlooked, and has resulted in some regrettably overbroad generalizations about CGL policies * * *.” Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 268 Wis.2d 16, 2004 WI 2, 673 N.W.2d 65, ¶ 39.
Conclusion
{¶ 36} The majority in this case makes an overbroad generalization about CGL policies in Ohio. Answering a question it should not even be answering, the majority misinterprets the contract and misapplies Ohio law, leaving us on the *490 wrong side of the divide of states that have considered this question. Accordingly, I dissent.
Davis & Young and Richard M. Garner, for petitioner.