[Cite as *B&J Resources, L.L.C. v. 28925 Lorain Inc.*, 2017-Ohio-7248.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105323**

# B&H RESOURCES, L.L.C.

PLAINTIFF-APPELLEE/
CROSS-APPELLANT

vs.

# 28925 LORAIN INC., ET AL.

DEFENDANTS

[Appeal By Resource Title National Agency, Inc.
Defendant-Appellant/Cross-Appellee]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-819069

**BEFORE:** Stewart, J., Kilbane, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 17, 2017

**ATTORNEY FOR APPELLANT/CROSS-APPELLEE**

David M. Cuppage
Climaco, Wilcox, Peca & Garofoli Co., L.P.A.
55 Public Square, Suite 1950
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE/CROSS-APPELLANT**

Christopher A. Murray
9715 Lake Avenue
Cleveland, OH 44102

**For 28925 Lorain Inc., et al.**

John Chirayil
Statutory Agent
3110 Springdale Avenue
Glenview, IL 60025

MELODY J. STEWART, J.:

{¶1} While conducting due diligence for the purchase of real property, plaintiff-appellee/cross-appellant B&H Resources, L.L.C. (through its sole shareholder, Tanios Bougebrayel), learned that there were delinquent taxes resulting from the seller's ongoing dispute with the board of revision's decision to assign the property a higher valuation than what the seller believed should be assigned. Believing that the tax issues had been resolved, Bougebrayel signed a purchase agreement that prorated taxes and assessments based on the last available tax duplicate. Unknown to Bougebrayel was that the ongoing tax appeals meant that the board of revision's higher valuation of the property had yet to be reflected on the tax duplicate existing at the time of closing and used by defendant-appellant/cross-appellee Resource Title National Agency ("Resource National"), the escrow agent. When the tax appeals were finally resolved, B&H received a sizable tax bill.

{¶2} B&H brought this action against Resource National, [1] alleging that it breached its contractual and fiduciary duties, and that it negligently performed the title exam by failing to provide information relating to potential title issues and property tax liens. Resource National counterclaimed, alleging that B&H and the seller agreed to

---

[1] B&H also named as defendants the seller, 28925 Lorain Inc. and its principal, John Chirayil; First American Title Insurance Company, the title insurer; Mark A. Parks, the Cuyahoga County Fiscal Officer; Jeannet Wright, the Cuyahoga County Treasurer; and the North Olmsted Board of Education. These defendants were all dismissed.

hold Resource National harmless for any loss or damage resulting from the exercise of its services and that B&H should compensate it for its costs of litigation. Ruling without opinion on cross-motions for summary judgment, the court found in favor of Resource National on B&H's complaint and in favor of B&H on Resource National's counterclaim. Both parties appeal.

{¶3} The underlying facts are largely undisputed. The subject property is used as a gas station. The seller purchased the property in 2007 for $1.1 million, but claimed that only $600,000 of that price went to the property itself — the remaining $500,000 covered inventory, costs associated with the gas station, and the purchase of a gas station in Illinois.

{¶4} When Cuyahoga County valued the property for tax purposes at the $1.1 million price payed by the seller in 2007, the seller objected on grounds that $1.1 million purchase price had been artificially inflated. He contested the valuation to the board of revision in two separate tax appeals: one appeal covered tax years 2007 and 2008; the other appeal covered tax years 2009-2011.

{¶5} As these tax appeals were progressing, Bougebrayel and the seller began negotiations for the sale of the gas station. Bougebrayel learned that there were delinquent taxes owed on the property. He was referred to the seller's attorney who told him that the matter had been "taken care of" and Bougebrayel only had to worry about future taxes because "back taxes will be on [the seller]" and come out of the seller's proceeds. Bougebrayel said that the seller's attorney did not give him any "detail" about

the tax issue, and he conceded that he did not request any documentation, nor did he make further inquiry into the tax matter.

{¶6} In fact, the tax appeals had been resolved adversely to the seller prior to closing on the sale, with the board of revision valuing the property at $1.1 million for all relevant tax years. This valuation was not, however, completely reflected in the tax duplicate available at the time of closing: the tax duplicate showed only that the property had been valued at $1.1 million for tax year 2011. Consistent with the parties' agreement to adjust outside of escrow any change in taxes resulting from a change in property valuation as reflected on the last available tax duplicate, the seller assumed the additional tax debt for tax year 2011. After closing, the new valuation caused B&H to incur tax liabilities of $53,308.12 for tax years 2007 and 2008, and $55,592.94 for tax years 2009 and 2010.

## I. The Cross-Appeal

{¶7} We first address the cross-appeal filed by B&H because its resolution could potentially render Resource National's appeal moot. Two issues are presented: (1) that the court erred by finding that Resource National did not breach its contract and (2) notwithstanding any alleged breach of contract, B&H had a viable negligence claim against Resource National for its failure to discover the outstanding tax issues and make those issues known to B&H.

### A. Breach of Contract

{¶8} B&H chose Resource National to provide title exams, settlement, and closing services. The "standard conditions of appointment of settlement agent and acceptance of escrow" stated that "[p]rorations of taxes or assessments shall be on the basis of the amount shown on the last available Tax Duplicate/Municipal Tax Invoice when required by the instructions [for escrow]." These terms were consistent with terms stated in the purchase agreement:

> PRORATIONS: Taxes and assessments, based on the last available tax duplicate, shall be prorated by the Escrow Agent as of the date of recording of the deed. The parties hereto agree to adjust directly outside escrow any change in taxes or assessments resulting from a change in property valuations, tax rate and/or the construction of improvements occurring before recording of the deed, but not reflected on the last available tax duplicate.

{¶9} In addition, B&H signed a property tax disclaimer acknowledging that Resource National "based tax prorations on the most recent data available from the county treasurer" and that Resource National "cannot be held responsible for adjustments and/or increases in property tax bills after closing. We must use information provided by the county."

{¶10} There is no question that Resource National used the "last available tax duplicate" at closing. That tax duplicate showed a total of $64,520.60 payable. That amount was withheld from the seller's proceeds and paid as real estate taxes at the time the deed was recorded. There is also no question of fact that the taxes that are the subject of this appeal were assessed post-closing. As required by the terms of the standard conditions of escrow, Resource National fully complied with its obligations by

using the last available tax duplicate as a basis for prorating taxes. As a matter of law, it did not breach its contract with B&H. *Gattozzi v. Midland First Am. Natl. Title*, 8th Dist. Cuyahoga No. 77148, 2000 Ohio App. LEXIS 4292, 8 (Sept. 21, 2000).

{¶11} B&H does not dispute that Resource National prorated taxes based on the last available tax duplicate. It maintains, however, that the proration language was only meant to apply to the current year's taxes being prorated as of the closing date and credited against the purchase price. It insists that by failing to inform it of the pending tax appeals, Resource National did not fulfill its contractual duties with care, skill, and faithfulness.

{¶12} "[T]here is an implied duty of good faith and fair dealing in every contract." *Am. Contr.'s Indemn. Co. v. Nicole Gas Prod., Ltd.*, 10th Dist. Franklin No. 07AP-1039, 2008-Ohio-5056, ¶ 13. In this context, the implied duty of good faith and fair dealing does not mean that parties are forbidden from exercising the rights and duties defined in a contract — it means that parties should not take "opportunistic advantage" of contractual terms in a way that was not contemplated at the time of drafting. *Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433, 443, 662 N.E.2d 1074 (1996), citing *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357-1358 (7th Cir.1990).

{¶13} The implied duty to not take opportunistic advantage of contractual terms does not mean that parties to negotiated contracts cannot enforce those terms "to the letter," even "to the great discomfort of their trading partners." *Kham & Nate's Shoes,*

*supra*. "Courts presume that a contract's intent resides in the language the parties chose to use in the agreement." *Huff v. FirstEnergy Corp*., 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12, citing *Shifrin v. Forest City Ents., Inc*., 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992). That language controls the relationship to the point where no implied covenants can arise in a contract when the matter to be implied is covered by the written terms of the agreement. *Hamilton Ins. Servs. v. Nationwide Ins. Cos*., 86 Ohio St.3d 270, 274, 714 N.E.2d 898 (1999).

{¶14} The contract plainly required Resource National to use the last available tax duplicate to prorate taxes and assessments without reference to any other requirements in this regard. Stated differently, nothing in the contract required Resource National to do more than use the last available tax duplicate to determine the amount to be withheld from the seller at closing. And to further solidify the point, Section 10(g) of the conditions of escrow expressly states that Resource National would not be responsible for "anything not specifically assumed or agreed to" in the standard conditions of escrow. As a matter of law, the terms and conditions of escrow, coupled with the purchase agreement itself, required Resource National to use the last available tax duplicate to apprise B&H of its tax liability or credits. This it did, so as a matter of law B&H did not breach the contract.

### B. Negligence

{¶15} B&H's negligence argument is not fundamentally different from its breach of implied contract argument: it maintains that Resource National failed to fully

investigate the property and failed to provide B&H with information relating to adverse board of revision decisions.

{¶16} The doctrine of "economic loss" states that a party cannot recover purely economic damages in a tort action against another party based upon the breach of contractually created duties. *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, syllabus. Tort law "is not intended to compensate parties for monetary losses suffered as a result of duties that are owed to them simply as a result of the contract." *Digiknow, Inc. v. PKXL Cards, Inc.*, 8th Dist. Cuyahoga No. 96034, 2011-Ohio-3592, ¶ 2, citing *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.*, 54 Ohio St.3d 1, 7, 560 N.E.2d 206 (1990).

{¶17} The damages that B&H seeks in its negligence claims are based on Resource National's alleged violation of a contract. The relationship between the parties was defined solely by contract, and to the extent that Resource National allegedly breached the contract, the breach of contract cause of action would be the sole avenue of recovery for B&H. On this basis we find as a matter of law that the court did not err by granting summary judgment on the causes of action that sounded in negligence.

{¶18} Apart from being barred by the doctrine of economic loss, the claims sounding in negligence failed to establish that Resource National breached any duty of care. Bougebrayel insisted that it was his understanding that it was the title agency's job to "dig up these things and bring it to my attention." Yet B&H has not cited any authority for the proposition that a title agency has a duty to go beyond what is

specifically agreed to in the written documentation. In fact, current standards established by the Ohio State Bar Association "except special taxes and assessments not shown on the county treasurer's public access records" from those things that title examiners have a duty to report. *Lone Star Equities, Inc. v. Dimitrouleas*, 2015-Ohio-2294, 34 N.E.3d 936, ¶ 83 (2d Dist.). Again, there is no question of fact that Resource National used the latest tax duplicate consistent not only with its contractual obligations, but in keeping with industry standards.

{¶19} A breach of the duty of care is an essential element of a negligence claim. *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 36. B&H failed to show that Resource National breached the applicable standard of care. The court did not err by granting summary judgment on the negligence counts.[2]

{¶20} B&H also pleaded a claim for negligent misrepresentation, alleging that Resource National provided "false, incomplete, and/or misleading information" to B&H regarding adverse board of revision decisions.

> The elements of a claim of negligent misrepresentation are: (1) one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest; (2) supplies false information for the guidance of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information.

---

[2] Bougebrayel said that the seller's attorney told him "that any past taxes due would come out of the purchase price, and that I only had to worry about taxes going forward." This statement does not support a negligence claim against Resource National.

*Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989).

{¶21} Fatal to B&H's claim is that Resource National did not supply "false" information regarding the pending tax proceedings. A claim of negligent misrepresentation requires an affirmatively false statement, not merely an omission. *Zuber v. Ohio Dept. of Ins.,* 34 Ohio App.3d 42, 45-46, 516 N.E.2d 244 (10th Dist.1986); *Leal v. Holtvogt*, 123 Ohio App.3d 51, 62, 702 N.E.2d 1246 (2d Dist.1998). B&H alleged only that Resource National omitted any mention of pending tax proceedings affecting the property. It presented no evidence to show that Resource National made any affirmative claims not based on the last available tax duplicate.

{¶22} Civ.R. 56(C) permits the trial court to enter summary judgment if, after construing the evidence most strongly in favor of the nonmoving party, "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made[.]" B&H has offered no evidence to create any genuine issue of material fact sufficient to forestall summary judgment.

## II. The Appeal

{¶23} The basis for Resource National's appeal is that the court erred by refusing to find that the indemnification clauses contained in the conditions of escrow required that Resource National be reimbursed for all of its costs and expenses, including reasonable attorney fees, because it was required to respond to this action despite it bearing no fault.

**{¶24}** The conditions of escrow contains two clauses that indemnified Resource National.   Section 1 of the conditions of escrow states:

> The parties hereby agree to save Agent harmless from any loss or damage resulting from such termination or declination and hereby indemnify Agent for any loss, cost or damage including, without limitation, attorney fees and costs of litigation which Agent may incur.

Section 3 of the conditions of escrow states: "if the escrow agent is required to respond to any court action without fault of the escrow agent, that the escrow agent shall be reimbursed for all his costs and expenses including reasonable attorney fees, all of which shall be charged to the appropriate party."   B&H argued below that these provision of the terms and conditions of escrow were meant to apply to the appointment of a settlement agent, but that its claims were based on Resource National's acting as title agent, not a settlement agent.

**{¶25}** We agree with B&H that Section 1 of the conditions of escrow does not provide indemnity for claims relating to title.   That section is titled "Escrow Deposits." It broadly addresses the termination of escrow and grants Resource National the right, upon termination of escrow, to retain sufficient funds until its "fees and costs are paid or secured to its satisfaction or, at its option, deduct such fees and costs from any such funds deposited in escrow."

**{¶26}** "In interpreting a provision in a written contract, the words used should be read in context and given their usual and ordinary meaning." *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192, 207 N.E.2d 747 (1965).   Read in context, the indemnity provision applies only to Resource National's conduct in terminating or

declining escrow based on nonpayment of its fees and costs. B&H's complaint does not allege that Resource National improperly terminated or declined escrow, nor does Resource National make that allegation in its counterclaim.

{¶27} We reach a similar conclusion with respect to the indemnification clause contained in Section 3 of the terms and conditions of escrow. That section is titled "Settlement Charges" and refers to escrow, settlement, title transfer, and recording of costs and sets forth the manner in which the seller and buyer will be charged. As with Section 1, Section 3 states that "Agent shall be paid in full at the settlement for all title, escrow and settlement fees and costs and may withhold settlement and retain all funds and documents held as escrow or settlement agent until such fees and costs are paid or secured to Agent's satisfaction." Read in context, the indemnity portion of Section 3 — that

> if the escrow agent is required to respond to any court action without fault of the escrow agent, that the escrow agent shall be reimbursed for all his costs and expenses including reasonable attorney fees, all of which shall be charged to the appropriate party

— applies only to Resource National's liability for withholding settlement and retaining all funds and documents held as escrow until it is paid. Resource National does not argue that its right to indemnity in this case exists because it withheld settlement pending payment of its fee.

{¶28} The specificity of the two indemnification clauses in the terms and conditions of escrow is important. Not only do they state different circumstances in which indemnity will apply, there is no overlap between them. In other words, they do

not provide wholesale indemnity protection for Resource National. If Resource National intended that B&H indemnify it for any and all acts without reference to specific circumstances, it could easily have done so without regard to specific sections in the terms and conditions of escrow.

{¶29} Resource National cites *Solomon v. Harwood*, 8th Dist. Cuyahoga No. 96256, 2011-Ohio-5268, a case where it acted as escrow agent, for the proposition that this court previously upheld a summary judgment to it for attorney fees and litigation costs under the same indemnity clause. The facts in *Solomon* are distinguishable: Resource National opened escrow for the pending sale of a property, but the sale fell through and it refunded a deposit made by the buyer. The seller brought suit against Resource National for breach of contract and Resource National counterclaimed for its costs of litigation pursuant to an indemnification clause in the standard conditions of settlement agent and acceptance of escrow relating to "termination or declinations." The court granted summary judgment to Resource National and we affirmed, noting that "[w]hen it became known to the title company that the purchase was not going to go through, the company refunded Solomon's $200,000 deposit." *Id*. at ¶ 33. Unlike the present case in which Resource National was not alleged to have acted improperly in terminating or declining escrow, the *Solomon* refund of funds held in escrow plainly involved a termination of escrow sufficient to invoke coverage under the indemnification provision. The assignment of error is overruled.

{¶30} Judgment affirmed.

It is ordered that the parties share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR